No. 22,862.

MARTHA E. BACON, *Appellee,* v. THE KANSAS CITY TERMINAL
RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

NEGLIGENCE—*Blasting—Injury to Dwelling House—Evidence.* The evi-
dence examined, and *held,* injury to a dwelling house, occasioned by
concussion and vibration produced by blasting, was the result of
negligence.

Appeal from Wyandotte district court, division No. 1; ED-
WARD L. FISCHER, judge. Opinion filed June 11, 1921. Af-
firmed.

*O. L. Miller,* of Kansas City, *S. W. Sawyer, S. W. Moore,*
and *John H. Lathrop,* all of Kansas City, Mo., for the ap-
pellant.

*J. H. Brady,* of Kansas City, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover damages for in-
jury to a dwelling house occasioned by blasting done by the
defendant. The verdict and judgment were for the plaintiff,
and the defendant appeals.

The blasting was done to procure material for fills for the
defendant's railroad. The bank of earth which was reduced
by blasting was located in a populated portion of the city
of Kansas City, was composed of sand and clay, with a top
stratum of clay, and was fifty or sixty feet high. It was not
practicable to use a steam shovel exclusively. The shovel could
reach upward but twenty or twenty-five feet, and its continued
use would cause the bank to cave, with danger to men and ma-
chinery. Blasts at the top of the bank would produce a bench
lower down, in which other charges would be exploded, and
the operation would be repeated until the earth was loosened
to the bottom of the bank. The defendant commenced blast-
ing about January 10, 1917. At first, from two to four cans
of blasting powder were placed in each hole, generally two
cans. Each can weighed twenty-five pounds. Being unable
to obtain sufficient earth to make satisfactory headway, the

engineer in charge of the work made application to the city engineer for permission to use heavier charges. After experiments, the city engineer authorized use of not to exceed four cans, or one hundred pounds of powder to a hole. The city engineer would supervise the placing of a charge, and then go to a residence in the vicinity and note the effect of the explosion. Complaints of the blasting had already reached his office, and he went into three or four houses in the neighborhood of the bank, and remained there while shots were fired, in order to satisfy himself in regard to what would be a reasonable amount of powder to use. As an engineering proposition, he thought that, under the conditions, the defendant should use one-hundred-pound charges. He did not think continued vibration from uninterrupted use of such charges would affect the structure of a house, but he would not say injury to some extent would not result. He testified the work could have been done with two-can charges, by taking more time and putting in more blasts.

There was abundant evidence the blasting did serious injury to near-by houses, including that of the plaintiff. One witness said it seemed as if a blast lifted his house and then rocked it from north to south. Foundations were cracked and broken. Coping was cracked and thrown out of line. Walls were cracked. Stucco and plastering were cracked. Casings, jambs and joints were loosened. Pillars and windows were pulled away from walls. Mantels and floors were drawn away so that cracks were opened. Windows were broken. Wall paper was ruined. Picture frames were shaken from walls, and things were shaken from mantels. A laundry sink was jarred loose, and cisterns were cracked. The plaintiff's house was injured to the extent of $850. The defendant endeavored to show that it was not responsible for the condition of the house, but merely succeeded in preventing recovery of the full amount claimed. None of the consequences referred to were occasioned by casting debris on the premises sustaining injury. There was evidence that some explosions produced greater shock than others, and there was no dispute that top-bench blasts were more violent in effect than blasts in lower benches. There was no evidence that the defendant owned the land on which the blasting was done, and so far as the

record discloses, the defendant might easily have procured material for its fills from some place far enough from human habitations not to endanger them. However, for purposes of the decision it will be assumed the defendant was making the best possible use of its own land in order to procure material to put its roadbed in condition to perform its functions as a public-service corporation.

The defendant asserts the evidence discloses it used due care in conducting its operations, and unless guilty of negligence, the consequence to plaintiff's property was *damnum absque injuria*.

The New York court of appeals presents one side of the ultimate problem in this way: By blasting, a man establishes his house or other building on a portion of a stony tract of land. Other portions of the tract are desirable for residence or business purposes, but owners are not able to build there without doing injurious blasting. The first occupant ought not to be allowed to monopolize the entire tract. (*Booth v. R., W. & O. T. R. R. Co.*, 140 N. Y. 267, 278.) The other side of the problem may be suggested in this way: The blasting which each subsequent builder must do will wreck all the improvements of his immediate predecessor. While the proposed case is an extreme one, it tests the principle involved. Decisions on the subject are collated in 12 L. R. A., n. s., 389; 27 L. R. A., n. s., 425; 34 L. R. A., n. s., 211; L. R. A. 1915 E, 356; L. R. A. 1917 A, 1016.

The defendant's argument is that it is lawful to enjoy property, and that the law favors beneficial use of property. The results of beneficial use, being lawful, cannot be injurious in a legal sense. Concussion and vibration resulting from blasting carefully done cannot be confined, and so long as no physical invasion of the plaintiff's property occurred by casting debris upon it, the limits of lawful beneficial enjoyment were not transgressed. The golden rule of the law, *sic utere tuo ut alienum non laedas*, finds no place in the defendant's brief.

The writer is of the opinion the distinction between injury by shock and injury by casting debris, affords no ground for distinction in liability. One constitutes actual, forcible, physical invasion just as much as the other. The same blast may break a window of a house with a fragment of rock, and

ruin the foundation and walls by concussion and vibration, or
may break a window of one house with a fragment, and de-
molish another by shock. It is not material that one form
of invasion may be ticketed "trespass" in the categories of
the law, while the other may not, and in the absence of techni-
cal negligence there still remains the question of reasonable
use, viewed broadly enough to include all interests and cir-
cumstances. The city engineer fairly indicated the elements
of the problem—efficient prosecution of the work of getting
out needed material, and security, not absolute, but reason-
able security for property in the neighborhood. The city en-
gineer was called in April. From January to April the gen-
eral practice was to use two cans of powder to a hole. The
defendant's engineer in charge said "two to four cans . . .
mostly used two cans." Doubtless four-can charges placed
in the top bench caused the complaints which reached the
city authorities. The work could have been continued with
two-can charges. That method required more time and more
blasts. Heavier charges were desired, not to obtain beneficial
use of property, but to obtain more material faster. Use of
four-can charges demonstrated they were destructive of oc-
cupied houses in the vicinity. Assuming that none of the
charges were misplaced or otherwise improperly handled, and
assuming that the defendant acted on the advice of capable
and prudent men who tried to balance conflicting interests
carefully, and so was not negligent, the writer would say a
jury would be justified in finding the limits of reasonable
privilege were overstepped. However, in two blasting cases
this court accepted the rule that negligence must be the ground
of liability when injury occurs without trespass in the techni-
cal sense (*Cherryvale v. Studyvin,* 76 Kan. 285, 91 Pac. 60;
*Rost v. Railroad Co.,* 95 Kan. 713, 149 Pac. 679.) Following
those decisions, the case under consideration was submitted
to the jury on the negligence theory, which, as indicated, is
acceptable to counsel for the defendant, and the theory will
again be made the basis of decision.

White was the defendant's employee in charge of blasting
when the city engineer made his tests. White testified as
follows:

"Mr. Bates, the engineer, and Mr. Barclay [city engineer] came there
to make tests of charges. They stood over me while I put in the charge,

and then went away to some house. After the tests I was instructed not to use more than four cans.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

I have had experience blasting earth. Put my holes 9 to 12 feet deep. . . . More vibration the deeper the hole. I shot my holes back about six feet. . . . You would get more with deeper hole and further back."

Neither the city engineer nor the defendant's engineer testified regarding the distance from the face of the bank the test holes were drilled. The city engineer testified that charges placed 15 feet from the face of the bank would cause greater vibration than they would if only 8 feet back—holes farther back would cause more vibration. He was corroborated by other expert witnesses. Herrin owned a house badly injured by the blasting. He testified as follows:

"Was present when tests were made by Mr. Barclay, city engineer. No blasts occurred that were damaging at that time. They were down there and they came to my house and were in my house when blasts were touched off, and, while there was quite a tremor, nothing to compare with some they had had."

The result is, hundred-pound charges, placed in holes six feet from face, were found not to be dangerous, and consequently were authorized by the city engineer.

Hall, who preceded White, testified that the farther back the holes were placed the greater the vibration, and that he put holes from 8 to 10 feet back. For the plaintiff, Milam said holes were placed 10 feet back, and sometimes farther. Herrin said they were placed from 15 to 20 feet back. Miller said they were placed from 5 to 12 feet back. Greer said they were sometimes placed 8 or 9 feet back, and sometimes 18 to 20 feet. The necessary inference is, the defendant abused its permission, and used hundred-pound charges to throw down two or three times the quantity of earth displaced by the test shots, notwithstanding the fact that shock increased with distance of the hole from face of the bank. Before April, the defendant evidently employed the same tactics, occasionally, to speed its work.

There is nothing else of importance in the case. Evidence of contemporaneous injury to other buildings in the same locality, from the same cause, was properly received. Since at the close of the testimony there was evidence of negligence,

the ruling on the demurrer to the plaintiff's evidence is not now material. Criticisms of the instructions given are without substantial merit, and the proper rule of damages was stated to the jury.

The judgment of the district court is affirmed.