**E. E. HOOD, Sr., et al., d/b/a
E. E. Hood & Sons, Appellants,**

v.

**J. A. LANING, Jr., et ux., Appellees.**

No. 14496.

Court of Civil Appeals of Texas.

San Antonio.

May 24, 1967.

Goodstein & Semaan, San Antonio, for appellants.

C. H. Gilmer, Rocksprings, Leo Darley, Uvalde, for appellees.

KLINGEMAN, Justice.

Suit by appellees against appellants for personal injuries and property damages resulting from blasting operations conducted by appellants while in the process of constructing a road. Trial was before the court without a jury and judgment was entered in favor of appellees.

Findings of fact and conclusions of law were made by the trial court. The material findings of fact are: That plaintiffs' home was completed for occupancy on November 16, 1960, and the cost of their home was $25,000; that on December 13, 1960, defendants were engaged in the construction of a farm-to-market road, and on such date one of defendants' employees set off a dynamite charge in such construction work, which charge was located 170 feet from plaintiffs' house; that before setting off such charge said employee went to plaintiffs' house and told Mrs. Doris Laning, one of the plaintiffs, that he was going to dynamite, and asked her to move a car that was in her driveway, which she did; that the charge was set off in three holes 3½ to 4 feet deep, and the charge consisted of one-half stick of dynamite in each hole, upon which was placed one shovel of ammonia nitrate, and dirt placed and tamped on top of said ammonia nitrate; that all three one-half sticks of dynamite exploded simultaneously; that the force of such charge propelled a rock, weighing in excess of ten pounds, from such location to a sufficient height that it came down on the roof of plaintiffs' house, making a hole in the roof and the ceiling; that plaintiff Mrs. Laning and her son were in the house at such time; that at such time small rocks and dirt appeared on the roof and a large rock appeared in one bedroom; light fixtures were broken in two rooms, dishes rattled on the shelves, a picture fell, various items of furniture were broken and scarred, various cracks appeared in different parts of the house, including cracks in both inside and outside walls, one crack being of sufficient width that daylight could be seen through it; some cracks extended from the walls into the floor, and in some instances into the foundation; a crack appeared in the garage floor and the patio floor, some pieces of terrazzo tile flooring were broken, and the tile flooring was loosened in several rooms; that none of such cracks existed before the explosion, and the damage was caused by the explosion shaking the house and foundation and causing the large rock to be propelled into the air and through the roof and ceiling of plaintiffs' home; that structural damage was done to the house by the explosion which cannot be permanently repaired; that plaintiff Mrs. Laning had a nervous condition prior to such explosion, and after such explosion such condition was more intense and she suffered shock as a result of damage to her house and the noise from such explosion; that the reasonable market value of the house before the explosion was $23,500, and after the explosion, $11,750; and the personal property and furniture damage was $443.66; that Mrs. Laning was damaged $1,000.00 as a result of aggravation of her prior illness; that no investigation was made by defendants or their employees to determine what amount of explosives would be safe to use at the time and place and under the conditions then existing; that the only measure taken by defendants to contain rock fragments was to tap a small amount of dirt on top of each hole; that after the explosion defendants requested and received permission to change the grade of such road, used no more explosives on the job, and thereafter used other methods; that plaintiffs were not warned to leave the residence; that failure to protect plaintiffs' residence and failure to warn constituted negligence; that such acts of negligence were the proximate cause of all the damage and injury sustained by plaintiffs to said residence, furniture and furnishings, and to \Mrs. Laning.

The court's material conclusions of law may be summarized as follows: That defendants and their employees were negligent (1) in using too large a charge of

explosive material for safety in setting the same off, at such time and place and under the circumstances; (2) in failing to cover up such place where such explosives were placed in such a manner as to hold or retain all the resulting rocks, boulders and debris, caused by such blast; (3) in setting off, at all, such explosives in such place at such time; (4) in failing to warn plaintiffs that they intended to set off a blast or explosion of the kind and character they did, in order to permit plaintiffs to flee their home; (5) in using a charge of explosive material too large for safety of plaintiffs and their property, at such time and place; (6) in failing to take proper precautions not to damage the property or persons of plaintiffs. That the negligence of defendants and their employees, as set out in Conclusions Nos. 1, 2, 3, 4, 5 and 6, was a proximate cause of the damages to the house of plaintiffs, damage to their furniture and personal property, and the aggravation of the prior illness of plaintiff Mrs. Laning.

Appellants in this appeal set forth 85 points of error, consisting chiefly of their contentions with regard to the different specific findings of negligence and proximate cause by the court: (1) that there was no evidence to support such findings and judgment; (2) that the evidence is insufficient to support such findings and judgment; (3) that such findings are contrary to the great weight and preponderance of the evidence. Appellants also complain of error of the court in refusing to amend certain findings of fact, in refusing to reconcile a finding of fact and conclusion of law, and in refusing to make certain specified requested findings of fact (Points of Error Nos. 82, 83 and 84). Appellants did not brief these three points and we find them without merit. Appellants' last point of error is that the judgment is excessive because the court allowed a recovery of damages to appellees' house alleged to have been caused from concussion and vibrations instead of limiting such recovery to the damages resulting from the rock going through the roof.

The thrust of appellants' contention is that while they concede that they are liable for any damages caused by the actual physical trespass of the rock going through the roof and ceiling, there is no evidence, or insufficient evidence, to establish negligence and proximate cause as to any damages resulting from concussion and vibrations.

Appellees assert that there is sufficient evidence of probative force to support the court's findings and conclusions of various specific alleged acts of negligence and causation, and that the judgment is sufficiently supported by the evidence, and further contend that such judgment is supported under the doctrine of res ipsa loquitur. Appellees did not specifically plead res ipsa loquitur, and we do not deem it necessary to pass on this contention on this appeal.

 Appellants concede, in their brief, that in blasting cases in this State where there has been an actual trespass, such as damages caused by rocks or debris, the courts have imposed a rule of strict liability as against the person using the explosives, and that insofar as appellants' liability for damages for such trespass in this case there is no dispute. This position is supported by the cases of Universal Atlas Cement Co. v. Oswald, Tex.Civ.App., 135 S.W.2d 591, affirmed, 138 Tex. 159, 157 S.W.2d 636 (Tex.Comm'n App.1941); Cisco & N. E. Ry. Co. v. Texas Pipe Line Co., Tex.Civ. App., 240 S.W. 990, writ ref'd. However, appellants further contend that with regard to all other damages, except those caused by such actual trespass, the Courts of Texas are committed to the rule that liability must be predicated upon negligence. Turner v. Big Lake Oil Co., 128 Tex. 155, 96 S.W.2d 221; Klostermann v. Houston Geophysical Co., Tex.Civ.App., 315 S.W.2d 664, writ ref'd; Standolind Oil & Gas Co. v. Lambert, Tex.Civ.App., 222 S.W.2d 125, no writ. We are in agreement with this position. We do not deem it necessary in this case to attempt to apportion the amount of damages caused by the actual

physical trespass of the rock falling through the roof and ceiling, and the amount caused by concussion and vibrations, because there is sufficient evidence of issuable negligence and causation to support the judgment of the court.

Appellants contend that in blasting cases, except where there has been an actual physical trespass, not only must plaintiff prove negligence, or the failure to use ordinary care, but also must produce evidence by an expert in the field of explosives to show what is a safe standard of care under the same or similar circumstances and the violation thereof. In support thereof, they cite: Sinclair Oil & Gas Co. v. Gordon, Tex.Civ.App., 319 S.W.2d 170, no writ; Dellinger v. Skelly Oil Co., Tex. Civ.App., 236 S.W.2d 675, writ ref'd n. r. e.; Stanolind Oil & Gas Co. v. Lambert, supra. These case are seismograph blasting cases. A brief review of the evidence at this point might be helpful. Both appellants and appellees put on expert witnesses in the field of use of explosive materials and their effect. The examination of the premises by such experts was made a considerable length of time after the actual explosion. According to appellants' evidence, the explosive used on the occasion of the damages was a charge set off in three holes between 2½ and 4 feet deep, approximately 2½ inches in diameter, with a half stick of dynamite in each hole, upon which was placed one shovel of ammonia nitrate, and dirt placed thereon, with all charges being exploded simultaneously. The evidence further shows that appellees' house was located approximately 170 feet from the charge; that it was built of concrete tile walls, with composition roof and solid concrete slab foundation with reinforcement steel, and was practically new, having been completed about one month prior to the explosion. That such explosion threw one rock, weighing in excess of ten pounds, into the air and on to the roof of appellees' house, making a hole in the roof and ceiling and falling into one of the bedrooms; that it also threw some small rocks and debris on the house.

Both Mr. and Mrs. Laning testified that there were no cracks in the house or foundation prior to the explosion, and Mrs. Laning specifically testified that she had gone over the entire house thoroughly the day before the blast because she was going to have a Christmas party and wanted to have it clean; that at such time she observed no cracks, but immediately after the blast a number of cracks appeared, including cracks in both interior and outside walls and in partition walls; that one of the cracks was of sufficient width that daylight could be seen through it; that some cracks extended from the walls into the foundation, and that there were other cracks in the foundation; that cracks appeared in the garage floor and the patio floor; that the tile flooring in several rooms was loosened, and in some instances the tiles were broken. This testimony was substantiated by the contractor, who testified that he made an inspection of the house very shortly before the explosion and soon thereafter. The evidence further showed that Mrs. Laning and her son, Buck, were in the house at the time of the explosion, and that dishes rattled on the shelves in the kitchen, a picture fell from the wall in one room, a light fixture was broken in another room, and that artificial grapes and flowers plastered to a plaque fell from the plaque in one room. Appellees' contractor testified that appellees' house suffered structural damage, which damage could not be permanently repaired. Two witnesses testified that the value of the house before the explosion was in excess of $25,000, and after the explosion, between $10,000 and $12,500. The testimony further showed that the charge holes were drilled into rock; that appellees' slab foundation was laid on a solid rock, and that after the explosion appellants requested and received permission to change the road grade and thereafter used no more explosives in the area; they used other methods to break up the rock.

Appellants' expert witness testified that it was highly improbable that the cracks in the house or foundation were caused by the explosion, and that in his opinion the cracking resulted from shrinking and expansion of the concrete and concrete blocks and from temperature and moisture changes, and was not in any way connected with the explosion; that from the amount of charge allegedly set off it would have been virtually impossible for ground-borne waves to damage a residence 180 feet away, and that he didn't think that there would be enough air-borne waves to cause any structural damage to the house. This expert admitted that it was unusual that such a blast would propel a rock in excess of ten pounds the distance that it did; and that it would be very unusual that from natural causes cracks would noticeably appear all over the house at one time in different materials, different floors, and tiles be broken, all within a span of a few hours. Appellees' expert, who made a thorough examination of the house, testified in some detail as to the cracks and other damages he observed, and stated that the blast could have caused the cracks and damages, and when asked: "If all these cracks that you observed appeared almost instantaneously and were evident immediately after the blast on December 13, 1960, would that in your opinion increase the possibility that they were caused by the dynamite blast?" stated, "It sure makes you think that way." The testimony showed that not only dynamite was used but that another explosive, ammonia nitrate, was also used in the blasting operations, and while there is no definite testimony as to the strength of this explosive, the testimony does show that it has explosive characteristics, and one of the appellants, Ranney V. Hood, who was the superintendent on the job, testified that the purpose of the dynamite was to set off the ammonia nitrate. As to the standard of care for such blasting operations, appellants' witnesses testified that the amount of charge used and the procedure followed was their normal and customary procedure in blasting operations. The standard of care and customary procedure would certainly vary under the particular facts or circumstances, the proximity to improvements, type of soil or terrain, and other matters would all enter into such standard. The standard of care or customary practice would not be the same where blasting operations were carried on in an isolated area and where they were carried on in a residential area. In a blasting case, Comanche Duke Oil Co. v. Texas Pac. Coal & Oil Co., 298 S.W. 554 (Tex. Comm'n App. 1927), the Court stated:

"It is easily conceivable that 'customary practices' might of themselves be unlawful or unreasonable or include negligence. * * * In the next place, when usage testimony becomes admissible in a dispute beyond the contract field, its purpose is not to fix the standard of conduct, but it is to give evidence to the trier of fact issues to aid him, in so far as it may, in applying the standard of conduct which the law itself prescribes. * * *"

and further stated:

"* * * while the standard of conduct which the law prescribes (here, we suppose, 'ordinary care') does not change, it does exact a measure of caution appropriate to the danger involved and, accordingly, may justify as extremely prudential an act or omission in one set of circumstances and denounce as reckless a like act or omission differently conditioned. * * *

"Due care, no doubt, involved good-faith observance of all relevant data and its lessons, including what was known and what was consciously unknowable about the qualities of the explosive and of the area in which its force was to be exerted, for there is a general obligation upon men to employ their senses in a humanitarian direction, * * *. A proper corollary is that the quantum of applied intelligence must increase with warning that the actor may be putting another man, or another man's property, in danger."

The case of McKay v. Kelly, Tex.Civ. App., 229 S.W.2d 117, is a blasting case somewhat similar to the case on appeal, although it did not involve a physical invasion of plaintiffs' premises by rock, debris, or other matter. Plaintiffs testified that simultaneously with explosions in defendant's caliche pit, which was between 700 to 1200 feet from plaintiffs' premises, the "whole premises" were shaken, cracks appeared in the walls, chimney and fireplace of their home, objects were shaken out of a cabinet to the floor, and after the blast a big crack appeared in the concrete porch, and there was other damage to the house. The Court of Civil Appeals applied the doctrine of res ipsa loquitur in holding defendant responsible for the damages and, in its opinion, the Court stated: "We believe it to be a matter of general knowledge that blasting by the use of explosives will not cause damage to adjacent property unless negligently conducted. * * * If a person in, say, blasting stumps sets off an explosion which levels his neighbor's house several hundred feet away, it would be rather ridiculous to require proof of the exact amount of explosive used in order to show that he used too much." The Supreme Court, in affirming such decision, 149 Tex. 343, 233 S.W.2d 121, held that it was unnecessary to decide such case on the basis of res ipsa loquitur, because there was some evidence which would have sustained a finding of negligence on the defendant's part.

The case of Pelphrey v. Diver, Tex.Civ. App., 348 S.W.2d 453, writ ref'd n. r. e., involved damages to plaintiff's home of hollow tile construction by blasting operations in a rock quarry about three-fourths of a mile away. The jury found that such damage to plaintiff's home was proximately caused by defendant's negligence. Defendant on appeal contended there was no evidence of negligence and none of proximate cause, relying chiefly on the testimony of one of his employees as to custom and usage, and also that of an expert who said that the damage he found to plaintiff's house could not have been caused by the explosion. The Court of Civil Appeals in affirming such judgment held that there was some evidence and sufficient evidence to support the jury's findings, stating that the evidence showed that an explosion was set off with sufficient force to cause damage to plaintiff's property; that it was near enough to and did cause damage, and that the explosion caused vibrations in the air and in the ground not only at plaintiff's residence but also at his neighbors' property.

Cage Brothers v. McCormick, Tex.Civ. App., 344 S.W.2d 203, writ ref'd n. r. e., was an action for damages alleged to have resulted from blasting operations in a quarry. There was evidence that there were no cracks in plaintiffs' homes before the blasting, but when the blasting started cracks began to appear in the walls. There was both expert and nonexpert testimony as to the nature and force of such explosions, with the testimony of plaintiffs' experts and defendants' experts conflicting. In affirming a judgment for plaintiffs on a jury verdict, this Court held that there was some evidence to support the jury's findings that defendants in conducting the blasting operations used an excessive amount of dynamite, and, in such opinion, Justice Murray stated: "Furthermore, the jury was not required to believe the opinions of appellants' experts." The testimony of plaintiffs and their witnesses in the case before us, that the damages to plaintiffs' home occurred immediately following the blast, contradicts defendants' expert witness' testimony that the damage he found to plaintiffs' house could not have been caused by the blast. In Weaver v. Benson, 152 Tex. 50, 254 S.W.2d 95 (1952), which was a suit for cracks in a wall allegedly caused by nearby blasting operations, the Court stated: "Doubtless the fact of even an atomic blast plus the bare fact that the crack exists is not evidence that the latter is due to the former, since obviously cracks in walls occur more often than not for reasons other than blasts. But where there

are additional circumstances in evidence tending to date the crack as coincident with the blast, the result may well be different. Surely if there were eye-witness testimony that the crack never existed before the blast and was noted for the first time the day after the blast, the degree of force of the blast—its ability to have caused the crack— would be at least a circumstance to fortify or weaken the inference from the date of origin that the crack was caused by the blast. * * * In blast-damage cases, the fact that causation is so often impossible of proof, except through circumstantial evidence, justifies a rather liberal attitude in judging the relevance of a particular circumstance."

 The record discloses that there was some evidence and sufficient evidence to support the judgment of the trial court. All of appellants' points of error are overruled. The judgment of the trial court is affirmed.