Nadine J. **BALLARD**, Plaintiff,

v.

**BUCKLEY POWDER COMPANY,**
Defendant.

No. 97–1351–WEB.

United States District Court,
D. Kansas.

July 12, 1999.

Gary R. House, Sedan, KS, Kurt A. Harper, Sherwood & Harper, Wichita, KS, for plaintiff.

Daniel G. Menzie, Turner & Boisseau, Chartered, Wichita, KS, for defendant.

### *Memorandum and Order*

WESLEY E. BROWN, Senior District Judge.

Plaintiff Nadine Ballard alleges that defendant Buckley Powder Company caused damage to her house and other structures on December 15, 1995, when Buckley was conducting blasting operations for construction of a nearby highway. She seeks to recover under theories of negligence and strict liability. The matter is now before the court on Buckley's motions to exclude testimony from plaintiff's expert and for summary judgment. The court finds oral argument would not assist in deciding the issues presented.

I. *Defendant's Motion to Exclude Testimony.*

Buckley moves to exclude the testimony of Gene Schuette, an engineer retained by plaintiff as an expert witness. Buckley argues Mr. Schuette is not qualified to offer expert opinions under Rule 702 and that to the extent he attempts to base his opinions on scientific principles his testimony does not meet the requirements of *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

A. *Facts.*

For purposes of this motion, the court finds no dispute as to the following facts.

Gene Schuette was identified by plaintiff as an expert and prepared two separate reports. The reports are attached to defendant's motion for summary judgment as Exhibits B and C. He received a B.S. degree in architectural engineering from Kansas State University in 1983 and has no post-graduate formal education.

Mr. Schuette's current occupation involves inspecting residential homes for structural problems, most often foundation problems, and making recommendations for repairs. His work has included designing foundations to withstand seismic activity such as earthquakes.

Mr. Schuette has had no training or education in blasting, has never worked for a blasting company, has never given advice to a blasting company, has never designed a blast, and has never operated any seismic recording devices to record the effect of a blast. Between his first and second deposition, Schuette obtained information on blasting from the Internet, spoke briefly with Alcohol, Tobacco and Firearms personnel, and learned from the Kansas state fire marshal that a license is required to conduct blasting in Kansas. Mr. Schuette has not taken any courses in blasting, has not done any blasting, has not been licensed to do so and has never taken the test to be licensed. Schuette is not familiar with blasting logs such as those used by the defendant, nor is he familiar with the formulas or the measurements found on those logs.

A blast such as the one complained of in this case creates seismic tremors, and the resulting tremors, rather than the blast itself, are what may or may not cause damage to property in the area. In this respect, blasting is similar to earthquakes, which also cause damage through seismic tremors.

Gene Schuette believes that someone involved in the blasting operations on December 15, 1995, committed some error, but he does not know what the error was. The reason he believes an error was committed is that Mrs. Ballard's house was damaged.

B. *Discussion.*

■ Buckley first argues that Mr. Schuette "is not qualified to offer any opinions relating to the standard of care of licensed, professional blasters" or "whether any such standard was breached in this case." Def. Mem. at 8. The court agrees. No testimony has been cited to show that Mr. Schuette is familiar with how the duty of reasonable care applies to blasting operations, or that he is otherwise qualified to express an opinion as to what the defendant did or failed to do to violate that duty. For example, the defense has offered testimony from a blasting expert who stated that vibration levels from the January 15th and 20th blasts were below limits found by the United States Bureau of Mines to provide a non-damage probability of better than 95%. Mr. Schuette was unfamiliar with these standards. He was also unfamiliar with the blasting logs used by the defendant, and the formulas and measurements contained in those logs. While he may have some expertise concerning the ability of various materials to withstand seismic energy, he does not have sufficient familiarity with blasting to express opinions about the appropriate standard of care for that activity. Finally, Mr. Schuette's opinion that the mere fact of damage to Mrs. Ballard's house shows that

the defendant was negligent is contrary to the general rule in Kansas that "there is no presumption of negligence from the fact of an injury or an adverse result." *See Smith v. Milfeld,* 19 Kan.App.2d 252, 869 P.2d 748 (1993). Under the circumstances, the court will grant defendant's motion to exclude any expert opinion testimony from Mr. Schuette concerning the applicable standard of care or whether Buckley breached that standard.

Defendant further contends under *Daubert* that Mr. Schuette is not qualified to state an opinion that the damage to Mrs. Ballard's house was caused by the defendant's blasting. In her response, plaintiff argues that *Daubert* does not apply here because Mr. Schuette's opinions are based on his training and experience, not upon scientific principle or methodology. Pl. Mem. at 2. Subsequent to the filing of this response, however, the Supreme Court decided *Kumho Tire Co. Ltd. v. Carmichael,* — U.S. ——, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), which held that *Daubert*'s inquiry into reliability applies to all expert opinion testimony, not just that which is "scientific" in nature.

Plaintiff argues in her brief—without citing supporting testimony—that there is no prescribed method for an engineer to follow in performing an analysis of the type done by Mr. Schuette. Even assuming that to be true, *Daubert* and *Kumho* still require a showing that Mr. Schuette could reliably determine the cause of the damage to Mrs. Ballard's house. Mr. Schuette clearly has some experience in identifying the sources of structural problems. But his report does not explain how his training or experience enables him to distinguish between property damage from ordinary settlement problems and damage caused by the "seismic activity" of a blast. He apparently has no particular training or experience with respect to vibration levels or property damage caused by blasting. Mr. Schuette is qualified by his experience to identify structural defects in residences and to recommend corrective measures. In fact, that appears to be the gist of his "report," which is actually a four-page let-

ter to Mrs. Ballard. The report notes at one point that "[t]he type of explosive device is not known, nor is it relevant to this report." Mr. Schuette explained in his deposition:

> I was dealing with a foundation, a house that was having problems with settlement, movement of the foundation, *et cetera.* The blast had occurred and the type of explosive as far as I was concerned was not relevant because it was a past tense and that I was dealing with the problem of correct—trying to give a correction for the settlement of the house.

Aside from not knowing the type of explosive involved, Mr. Schuette was unaware of the exact location of the blast and apparently did not know or consider to be significant the amount or depth of explosives used.

No explanation is offered as to the method or reasoning used by Mr. Schuette to determine the cause of the structural damage claimed by Mrs. Ballard. This makes it difficult, if not impossible, to assess the reliability of his opinion. Although Mr. Schuette's report states that he performed an inspection "to determine the cause of damages to the [plaintiff's] dwelling," he appears to have assumed that the damage was caused by blasting because he considered the damage to be "consistent with" such a cause. He ultimately concluded that "the damage to the structure is exactly the type which would be expected from an explosion," but he does not explain how such damage differs from the run-of-the-mill structural damage he encounters, nor does he discuss the probability that the damage resulted from forces or factors other than blasting. It is common knowledge that some houses settle over time and incur damage of the type claimed, and in fact Mr. Schuette's report states that damage to Mrs. Ballard's house has appeared from the settling of the walls and foundation and that "[t]he settlement is due to consolidation of the disturbed bearing soils." The report then assumes without discussion that this settlement was

due to the defendant's blasting. The report contains no mention of the age of Mrs. Ballard's house, the probability that the damage did or did not result from natural settlement of the soil, or the presence of any pre-existing damage of the type now claimed by plaintiff (although Mr. Schuette opined that some of the outdoor cracks he saw were "relatively new" because they had sharp edges and contained no debris). Moreover, the report indicates Mr. Schuette's inspection was not conducted until September of 1996, nearly ten months after the blast, which undermines any argument that the temporal proximity of the blast and the observation of damage sustains his opinion as to causation. Nothing is cited to show that Mr. Schuette's method or basis for determining causation has been tested or subjected to peer review, has a known or potential rate of error, or has attained general acceptance in the field of engineering. *Cf. Kumho Tire, supra.* In sum, to the extent plaintiff intends to offer an opinion by Mr. Schuette that the defendant's blasting operations caused damage to plaintiff's property, the court agrees with the defendant that his opinion would not assist the trier of fact and must be excluded pursuant to *Kumho* because it fails to meet the standards for reliability embodied in Fed. R.Evid. 702.

Finally, defendant argues that Mr. Schuette "has no qualifications to offer any opinions on whether the risk of harm associated with [blasting] can be eliminated through the use of reasonable care." Def. Mem. at 8. Given Mr. Schuette's unfamiliarity with blasting and the standard of care it requires, the court must also conclude he is not qualified to express an opinion on this particular issue. Accordingly, the motion is granted as to that issue.

## II. *Defendant's Motion for Summary Judgment.*

### A. *Facts.*

Defendant Buckley seeks summary judgment on plaintiff's claims for negligence and strict liability. For purposes of summary judgment, the court finds no genuine dispute as to the following facts.

Plaintiff contends she suffered property damage as a result of a blast set off by Buckley on December 15, 1995, and that Buckley is liable to her under a theory of negligence and/or strict liability.

Although defendant contends it has a log for each blast it conducted on the U.S. Highway 160 project and that Exhibit L represents an accurate log for the only blast conducted .on December 15, 1995, plaintiff's testimony is that there were two separate blasts on December 15th, one around 12:15 p.m. and one between 2 and 4 p.m. Pl. Exh. 2 at 9, 11–12. Additionally, plaintiff cites the testimony of her neighbor, A'meta Dilly, who testified that a big blast occurred before 12:30 p.m. on that day. Pl. Exh. 3 at 10.

A separate blast was conducted on December 20, 1995, closer to the Ballard residence than the one or two blasts on December 15th. Mrs. Ballard testified that the December 20, 1995, blast, which was recorded by a seismograph brought to her property, was about like all the other blasts. This latter blast did not show any appreciable seismic activity with it, and the seismograph showed "nothing."

A blast such as the one complained of in this case creates seismic tremors, and the resulting tremors, rather than the blast itself, are what may or may not cause damage to property in the area.

. The damage alleged by Mrs. Ballard is "nail pops," cracks in sheetrock, cracks in mortar, cracks in vinyl, separation of a rock facade from the house, cracks in cement sidewalks and driveways, and a slab foundation which is cracked and uneven.

The problem with Mrs. Ballard's foundation in terms of being "out of level" is normal for houses with foundation problems.

There are a large number of reasons why cracks can occur to houses, including shrinkage, settlement and pressure.

One of the most common causes of "nail pops" is shrinking of lumber, which forces the nail outward.

Mrs. Ballard's residence, the building which she claims was damaged by the blast, was built in approximately 1980.

Gene Schuette agrees that the vertical cracks he observed in the stone facade of the house could result from other events even though he believes they are a typical indication of sudden movement.[1]

Mrs. Ballard noticed a crack in her home before December of 1995, which is before the blast in question. She did not notice any damage to her property immediately after the blast. She noticed damage and reported it within two to three weeks after the blast.

After the visit to her property by Gene Schuette in September of 1996, Mrs. Ballard discovered, and made a list of, damage she is claiming in this lawsuit.

Mr. Schuette believes that fractures he observed in the mortar joint occurred within the last couple of years, and more likely within the last year, prior to his inspection in September of 1996.

Mr. Schuette believes that the movement in the sidewalk he observed in September of 1996 occurred within the six months previous to his inspection.

The blast in question occurred approximately one-quarter mile west by 100 yards north of Mrs. Ballard's property.

According to Randall Wheeler of Industrial Seismology, an expert retained by the defendant, controlling vibration levels in blasting so that they are within recognized safety criteria is not difficult. For the most part, it is simply a matter of maintaining a proper relationship between the distance to a point of concern and the size of the charge detonated per delay. In his opinion, any competent blaster exercising reasonable care is able to eliminate the risk of exceeding vibration safety criteria.

Blasting of "road cuts" are sometimes conducted in sizes equal to or greater than the size of the blast in this lawsuit and within 500 feet of residences or other structures.

### B. *Summary Judgment.*

The standards and procedures for summary judgment are well established and will not be fully repeated here. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In essence, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.*

### C. *Discussion.*

Defendant argues it is entitled to summary judgment on plaintiff's claim for negligence because there is no competent evidence that Buckley breached the applicable standard of care. Buckley further contends the doctrine of *res ipsa loquitur,* upon which plaintiff attempts to rely, is inapplicable to the facts of the case. Finally, Buckley argues plaintiff cannot support a claim for strict liability because she has no evidence that blasting operations of the type engaged in are abnormally dangerous.

#### (1) *Kansas Blasting Cases.*

There appear to be no recent Kansas cases involving blasting, although there are numerous older ones. In *City of Cherryvale v. Studyvin,* 76 Kan. 285, 91 P. 60 (1907), the plaintiff claimed the walls of his building were damaged by nearby blasting operations of the defendant city. Prior to the blasting, plaintiff had informed the city that his building was "green" (it was "not well settled" and the mortar was not "seasoned") and requested that the city use

---

1. The defendant did not specifically object to the opinions of Mr. Schuette which are set forth in the above statement of facts.

light charges. The city nevertheless damaged the building in the course of blasting. In upholding a verdict in plaintiff's favor, the Court noted "that negligence will not be presumed from the jarring of the earth or the concussion of the air, but the burden is upon the claimant, to 'make it appear that the explosion was unnecessarily violent and carelessly prepared for, having regard to the place and surroundings.' " *Id.*, 91 P. at 61. In other words, the Court said, the claimant had to prove that the injury resulted from negligence in the doing of the work. *Id.* The Court found that the negligence of the city was shown by the testimony of the man in charge of the blasting, who stated that he used more dynamite than was necessary because doing so sped up the work. *Id.*

In *Rost v. Union Pac. R. Co.*, 95 Kan. 713, 149 P. 679 (1915), the plaintiff likewise sued for damages to her house caused by the defendant's blasting. The blasting had been going on for several months without incident until one day when plaintiff was home and a blast shook her house, cracking a strip around the ceiling. Another blast followed and cracked the ceiling and the wall. In addressing this claim, the Court adhered to the rule of *Cherryvale v. Studyvin, supra*, that the plaintiff must prove the injury resulted from negligence. *Rost*, 149 P. at 680. Although "in a technical sense no express negligence was specifically described" by the plaintiff in this case, the Court upheld a verdict in plaintiff's favor because, it said, a fair inference from the evidence was that after a long continuance of the work in a careful manner, an extraordinary amount of explosives was used, resulting in damage. *Id.* The Court noted, however, that "[t]his does not mean that it is a case of res ipsa loquitur, or that the mere fact of injury is proof of negligence." *Id.*

In another case, *Bacon v. Kansas City Terminal Ry. Co.*, 109 Kan. 234, 198 P. 942 (1921), the Court again applied a negligence analysis in a case where there was "abundant evidence that the blasting did serious damage to nearby houses...." *Id.*, 198 P. at 942. The Court found there was sufficient evidence of negligence to support a plaintiff's verdict. Specifically, although an engineer had approved the quantity of explosives being used by the defendant, the defendant "abused its permission" by conducting blasts at distances other than what had been approved and tested, which, as the defendant knew, had the effect of increasing the resulting shock to nearby property. *Id.* at 944.

More recently, in *Feger v. Concrete Materials & Constr. Co.*, 172 Kan. 75, 238 P.2d 708 (1951), which involved blasting operations at a quarry near the plaintiff's residence, the plaintiff alleged the defendant "used an unnecessary and excessive charge of high explosives" which shook the foundation of plaintiff's residence and caused a four-pound lamp to fall from a shelf, striking the plaintiff's minor child and knocking him unconscious. The Court first held that the superintendent and manager of the quarry were properly joined as defendants because they were charged "with their own individual negligent acts of improperly supervising and controlling the blasting operations." *Id.*, 238 P.2d at 711. Next, the Court noted that as far as the negligent using of explosives—a dangerous instrumentality—was concerned, the rule was that the wrongdoer is liable for all consequences naturally resulting from his wrong. *Id.* The Court thus rejected the defendant's argument that the injury to the child was not foreseeable: "Whether appellants should have foreseen that some, not necessarily this particular, injury would be likely to result in the immediate vicinity from blastings caused by the use of 'an unnecessary and excessive charge of high explosive', as alleged, is a jury question." *Id.* The Court also recognized that some jurisdictions had imposed absolute liability for the use of explosives, as opposed to liability only for negligence, but said "[i]rrespective of the comparative merits of the two rules" the defendant's demurrer in this case was overcome because the petition charged the defendant with conduct from which negligence could reasonably be inferred. *Id.*

Finally, in a different context, the Kansas Supreme Court has more recently stated: "We have characterized certain instrumentalities, i.e. explosives, ... to be inherently dangerous" and "[t]he highest degree of care is required of all responsible persons having ownership or control of dangerous explosives such as dynamite and firearms." *See Long v. Turk,* 265 Kan. 855, 962 P.2d 1093, 1097 (1998).

### (2) *Negligence.*

Buckley argues that any claim for negligence fails because plaintiff has no competent expert testimony or other evidence to show that Buckley failed to exercise appropriate care in conducting the blasts. In response, plaintiff argues that expert testimony is not required in this case. She argues a jury may properly infer from the fact of harm that Buckley was negligent in the manner in which the blast was conducted. (*Citing Hood v. Laning,* 415 S.W.2d 953 (Tex.Civ.App.1967)). She also argues that if the risk of harm from blasting may be eliminated through the exercise of reasonable care, as defendant contends, then a showing that the blast caused damage necessarily implies that the defendant failed to exercise reasonable care.

■ Even assuming expert testimony is not required in this case, plaintiff has failed to cite evidence from which a jury could reasonably infer that the defendant was negligent and that its negligence caused the damage of which she complains. In the *Cherryvale* case, *supra,* the court said the burden was on the claimant to " 'make it appear that the explosion was unnecessarily violent and carelessly prepared for, having regard to the place and surroundings.' " The burden was met in that case by testimony from the man in charge of the blast who admitted he used more dynamite than was necessary despite a warning from the plaintiff that his building was susceptible to damage. In *Rost,* the mere fact that the blast caused damage to a house permitted the jury to infer that the defendant used an excessive charge because the defendant had been conducting blasts for several months with-

out causing damage. In *Bacon,* there was evidence the defendant conducted the blast at a distance not approved by its engineer. And in *Feger,* although the specific basis for a finding of negligence was not stated, the Court intimated it was reasonable to infer that an excessive charge was used because of the blast's unusually violent effect—i.e., knocking a four-pound lamp off a shelf. By contrast with these cases, plaintiff cites nothing from which a jury could reasonably infer that Buckley failed to use proper care in conducting the blast or that it used an excessive charge inappropriate to the surroundings. There is no testimony or specific evidence that the defendant used an unusual charge or that it should have known plaintiff's residence was susceptible to damage given the circumstances of the blast. Unlike *Feger,* the damage allegedly resulting from the blast in this case does not give rise to an inference that the charges were excessive. The damage in this case did not even occur simultaneously with the blast, and plaintiff has failed to cite evidence to show that the damage did not result from natural settlement or other forces. Even assuming that one conducting blasting operations is required to use "[t]he highest degree of care" (*Long v. Turk, supra* ), a jury would have no basis other than speculation to conclude that the damage to Mrs. Ballard's house was caused by excessive or improper blasting. Beyond the mere fact of damage, plaintiff has no evidence to suggest that Buckley was negligent.

■ Plaintiff contends that an inference of negligence arises from application of *res ipsa loquitur.* That doctrine recognizes that some circumstances reasonably give rise to an inference of negligence even in the absence of direct proof of a negligent act. "Essential to the application of the doctrine of res ipsa loquitur is that (1) It must be shown that the thing or instrumentality causing the injury or damage was within the exclusive control of the defendant; (2) the occurrence must be of such kind or nature as ordinarily does not

occur in the absence of someone's negligence; and (3) the occurrence must not have been due to contributory negligence of the plaintiff." *Bias v. Montgomery Elevator Co.*, 216 Kan. 341, Syl. ¶ 1, 532 P.2d 1053 (1975).

The court concludes that *res ipsa loquitur* is inapplicable under the facts of this case. The type of damage claimed by Mrs. Ballard frequently occurs in the absence of any blasting. In fact, the evidence shows there was some settlement damage to Mrs. Ballard's house before the blasting began. *Cf. John T. Arnold Associates, Inc. v. City of Wichita*, 5 Kan. App.2d 301, 615 P.2d 814 (1980) (refusing to apply *res ipsa loquitur* where damage was caused by a broken water main because plaintiff failed to show that the occurrence was of a kind that does not occur in the absence of negligence). Under the evidence cited, there is no basis upon which one could reasonably conclude that the damage to Mrs. Ballard's house was more likely caused by blasting than by other forces. If the damage had occurred simultaneously with the blast, that could give rise to a strong inference of causation, but the plaintiff observed no damage until some weeks after the blasting. Moreover, the blast was conducted a quarter-mile away from the house, and there is no evidence that conducting a blast at such a distance from a residence was inappropriate or likely to cause damage. Nor is there any evidence to suggest that the charges were excessive. Given these facts, it cannot be said that the damage was of such a nature that it does not ordinarily occur in the absence of negligence. While it is true that the plaintiff does not have to eliminate all other possible causes of the accident for *res ipsa loquitur* to apply, the plaintiff must produce sufficient evidence from which a reasonable person could say that, on the whole, it is more likely than not that the defendant was negligent. *Bias*, 216 Kan. at 344, 532 P.2d 1053. Kansas courts have refused to permit the use of *res ipsa* where, as here, the evidence discloses other equally possible causes of the damage. *See e.g., Bias*, 216 Kan. at 346, 532 P.2d 1053 ("In the instant case the evidence discloses there were other equally possible causes of the accident in addition to the possibility of defendant's negligence. ... In order to recover under the theory of res ipsa loquitur, plaintiff must present sufficient evidence from which it is reasonable to infer that more likely than not the cause of the [accident] was one for which defendant was responsible."); *Savina v. Sterling Drug, Inc.*, 247 Kan. 105, 133, 795 P.2d 915 (1990) ("Here, the evidence establishes that it is at least equally probable that the negligence of another ... was the cause of the injury. Because plaintiff failed to present evidence establishing that the acts of the defendants caused plaintiff's injury, the trial court properly granted summary judgment on the issue of res ipsa loquitur."); *Mellies v. National Heritage, Inc.*, 6 Kan.App.2d 910, 636 P.2d 215 (1981) ("Given the fact that proximate cause was not certain, the doctrine of res ipsa loquitur would not be applicable."); *John T. Arnold Associates, Inc.*, 5 Kan. App.2d at 308, 615 P.2d 814 (the doctrine cannot be applied where the thing which actually caused the damage is unknown). Because plaintiff has failed to cite evidence from which a jury could reasonably find that Buckley failed to use appropriate care under the circumstances, Buckley is entitled to judgment as a matter of law on plaintiff's claim for negligence. (3). *Strict Liability.* Lastly, Buckley argues it is entitled to summary judgment on plaintiff's strict liability claim because plaintiff has failed to produce evidence that blasting under the conditions present in this case was an "abnormally dangerous activity" as defined in Section 520 of the Restatement (Second) of Torts and *Williams v. Amoco Production Co.*, 241 Kan. 102, 115, 734 P.2d 1113 (1987).

The cases previously discussed show that Kansas courts have traditionally applied a negligence standard in blasting cases, under which the plaintiff must show that the defendant somehow failed to exer-

cise proper care in conducting the blast. All of those cases, however, pre-dated the Supreme Court's adoption of the Restatement test for abnormally dangerous activities in *Williams.* Given the Court's view in *Williams,* as well as the number of other jurisdictions that have applied strict liability in blasting cases, it must be presumed that Kansas courts would at least consider application of the doctrine in a case such as this. Nevertheless, the plaintiff has failed to cite any evidence establishing the factors necessary to support such a claim—such as evidence of a high degree of risk of harm to the person or property of others from this type of blasting, the likelihood that the harm will be great, and the inability to eliminate the risk by the exercise of reasonable care. *See Williams, supra.* By contrast, the defendant cites an affidavit from its expert in blasting who stated, among other things, that: there was not a high degree of risk of harm from blasting vibrations, as evidenced by the minuscule number of damage claims asserted compared to the number of blasts conducted; that damage caused by blasting vibration is nearly always cosmetic rather than structural; that any competent blaster exercising reasonable care could control vibrations from the blast to keep them within recognized safety criteria; and that conducting a blast one-quarter of a mile away from a residence was not in close proximity and was not inappropriate. Plaintiff cites authorities from other jurisdictions where blasting has been found to be an abnormally dangerous activity, but cites no evidence to contradict the facts asserted by the defendant. *See Falls v. Scott,* 249 Kan. 54, Syl. ¶ 3, 815, 815 P.2d 1104 p.2d 1104 (1991) ("When ruling on a motion for summary judgment, the trial court as a matter of law must determine from the undisputed facts contained in the record whether the activity under review is inherently dangerous."). Based on these uncontroverted facts, the court would have to conclude that the type of blasting activity at issue in this case was not an abnormally dangerous activity subject to strict liability. *Cf. Dai-*

*gle v. Shell Oil Co.,* 972 F.2d 1527, 1544 (10th Cir.1992) (although blasting is commonly recognized as ultra hazardous, "[t]o impose an inflexible strict liability rule on all blasting without consideration of the circumstances would be ... incorrect" under the Restatement test). Accordingly, the court finds defendant's motion for summary judgment on the claim for strict liability must also be granted.

### III. *Conclusion.*

Defendant Buckley's Motion to Exclude Testimony (Doc. 46) and Motion for Summary Judgment (Doc. 44) are hereby GRANTED. The clerk is directed to enter judgment of dismissal in favor of the defendant.