W. O. PELPHREY, Appellant,

v.

Clarence Nabor DIVER, Appellee.

No. 10882.

Court of Civil Appeals of Texas.

Austin.

July 12, 1961.

Rehearing Denied August 2, 1961.

Vinson, Elkins, Weems & Searls, Gaius G. Gannon, Jr., Houston, for appellant.

Leonard Allen, Rockdale, Jack W. Prescott, Cameron, for appellee.

GRAY, Justice.

Appellant, W. O. Pelphrey, has appealed from a judgment awarding appellee, Clarence Nabor Diver, a recovery for damages to his home alleged to have been caused by negligence in blasting in a rock quarry or pit.

Appellant was engaged in highway construction for the State in Milam County and to secure foundation material he blasted rock in a pit on a hill. The hill was higher than the surrounding territory, the houses in the area were visible from the pit and it was generally visible from them.

Appellee alleged that on or about August 5, 1959 at about 5:30 p. m. his home was damaged by an explosion set off by appellant or his employees at the rock pit being used by appellant; that his home was located about three fourths of a mile from the pit, and that his home was of hollow tile construction with sheetrock partitions. He alleged the damages sustained to his home and its value before and after the explosion. He alleged nine separate acts or omissions on appellant's part, and that each was negligence and a proximate cause of his damage. Appellant answered by a general denial.

Appellee also sued St. Paul Fire and Marine Insurance Company to recover on a contract of insurance. That company answered and by its cross action sought a recovery over against appellant for the amount appellee recovered against it. A judgment for $5,000 against the insurance company was rendered and it was awarded

a recovery for this amount against appellant. The insurance company has not appealed, it is not a party here and will not be further noticed. The judgment against appellant is for $8,842 and provides:

"* * * plaintiff shall be required to collect the above judgment against W. O. Pelphrey before he shall collect anything from said Insurance Company and if, after exhausting all legal remedies, the Plaintiff is unable to collect above judgment against said W. O. Pelphrey, then he may collect from said Insurance Company, but if he can collect his judgment from Pelphrey, he shall take nothing as against said Insurance Company."

The witness Allgood testified that he was general superintendent for appellant. He described the blasting operations and said there were two kinds of rock in the pit, one soft and one hard, and that it took more energy to break the hard rock than it did the soft. The soft rock was about 18 feet thick and the hard rock varied to about 9 feet in thickness. The soft rock was on top, it was used first and practically all of the rock in the pit was used on the construction. Below the hard rock there was a sand pit.

A rotary drill was used, four inch holes were drilled in the soft rock to a depth of about 18 or 20 feet, and smaller holes, and of course to a lesser depth, were drilled in the hard rock. These holes were drilled in a pattern and distances apart. The holes were loaded with explosives which were exploded and the broken rock then stockpiled for use on the highway. One blast would loosen five, six or eight thousand yards of material. In the hard rock the holes were loaded with the equivalent of about three thousand pounds of powder and in the soft rock with about five or six thousand pounds. Three kinds of explosives were used: gelemite (same as dynamite) texmite and dynamite—dynamite being more powerful than texmite. Allgood said that he gave the pattern for the blasting but other employees did the actual drilling, loading the holes and shooting the blasts. He said that he and the engineer furnished by the powder company determined the amount of powder to be put in the holes; that said engineer helps design the shots but that he himself was the boss in charge and had the final say in loading the holes.

The blasting was done only when materials were needed. It began on June 22 or 24, 1959 and ended September 2, 1959. During that time twelve explosions occurred. The blasting was done by one Ruiz who did not testify. Allgood said he was not present at all of the explosions but was present at the first two and at the last one on September 2, 1959. He testified from daily work sheets and said they showed a blast occurred in the pit on August 5, 1959 at 6 p. m. He said this sheet was written up differently from the others; that it showed: 101 holes with a 9 x 7 spacing and a depth of 17 feet; 2650 pounds of fertilizer (texmite) and seven cases of Hercules (350 pounds of dynamite) used and 4800 cubic yards of rock broken up. He said he did not know whether the rock was hard or soft.

The only other employee of appellant who testified at the trial was Eugene Morgan whose testimony will be later noticed.

Appellee testified that his house was built in the summer of 1955; that its outside walls were hollow tile plastered on the inside and that it had sheetrock on wooden studs for the partitions; that it was on a reinforced concrete foundation with a beam through the center; that the foundation was on clay with a poured sand base of about six inches; that it had five rooms, a bath and carport. He said the rock pit was about three fourths of a mile from his home; that he recalled the several blasts set off at the pit and that the one on or about August 5, 1959 was outstanding. He said most of them occurred in the late afternoon and that he was usually at home. He said that when the August 5 blast occurred he was sitting

in his home with his wife; that the blast "shook the elements and the ground and everything" that the plaster on the walls of his home began falling off in big strips and that at least half of it was cracked and ruined and that eleven cracks appeared in the outside walls. He said he used a corn scoop to get the plaster out of his house. He said he looked toward the pit and saw a big dust cloud there and that it looked like a picture of an atom bomb blast and said the blast on August 5 was the heaviest one of them all.

Appellee's daughter, Mrs. Peggy Schlemmer, testified that she lived about 175 yards from her father's house; that she remembered the blasting at the rock pit in 1959; that during the first part of August there was a "terrible" blast; that it was greater than the others; that she lived in a lumber house and that she heard her dishes and windows rattle; that she ran out on her porch and saw the dust cloud over on the mountain where the pit was located. She said that at the time she was preparing supper and that it was before her husband came home from work. She said that she then went to her father's house, saw the cracks in the outside walls and plaster on the floors and that they were cleaning the plaster out of the house and that she helped them. She described the damages to the house and said that afterwards when it rained that the rain came in the house and said that prior to the blast there had been no trouble with the plaster in the house and no trouble with the outside walls.

Mrs. Giles Yoakum testified that she lived about a third of a mile from appellee; that she could see the blasting pit real well from her home; that she lived in a frame house about three fourths of a mile from the pit; that she remembered a number of blasts; that she remembered one around the first part of August; that she thought it was a bomb and that it was a lot greater than the others. She said it shook the windows, rattled the dishes, caused the linoleum to come up from the floor and the television to go off. She said they had an underground cistern and a few days after the blast she went to get water from it and there was no water there; that upon examination they found the bottom of the cistern cracked and that it had to be repaired. She said her home was about the same distance from the pit as was appellee's home and that her house was east of appellee's. She said after the blast she went outside and saw "that mushroom cloud" and that the dust came nearly to her house. She said she had visited in appellee's home before and after the August 5 blast; that prior to that time the house was in good condition; that afterwards it was in a damaged condition, and described the damages substantially as set out above.

Curtis Hairston testified that he lived about a quarter of a mile from the pit and about a mile from appellee; that he was employed by the Milano school as custodian and bus driver; that he was familiar with appellant's blasting operations, and that he was usually at home when the blasts occurred because they blasted after quitting time. He said he lived in the same general direction as appellee from the pit and that appellee lived about a mile from the pit. He said some of the blasts were heavier than others and that the one on August 5 was the heaviest; that he was at his home at the time and that it broke sheetrock in his house. He said his house was a frame house built in an "L" shape; that the blast pulled the house loose at the "L", and that it felt like the ground was going to rise up. He said he had lived in the area all of his life and was familiar with the terrain, the land and the hills there; that he had gotten his knowledge and experience by digging wells in the area; that generally it is sand down about twenty-five feet and then sand rock; that the blasting at the pit was on the main fault which runs from northeast to the southwest and that other faults lead off from the main fault to the north and to the south; that he had a well on his place which was curbed down twenty-five feet to the rock; that

the blast on August 5, 1959 broke the wall and caused his well to cave in about thirty feet down and that he had to have it curbed. He described appellee's house and the damage to it.

A surveyor testified that he measured the distance from the pit to appellee's house and that the distance is 1.557 miles and that appellee's house is north 22 degrees 40 minutes west from the pit.

No employee of appellant who was present at the August 5 blast or who heard the explosion testified. It appears that the above mentioned Eugene Morgan began his employment about August 7, 1959.

Ernest E. Taylor, Jr., an engineer, employed by the above named insurance company to inspect appellee's house and who did inspect it October 21, 1959 was called by appellant as a witness. He testified as an expert and said the damages he found to appellee's house could not have been caused by the explosion. He did not examine the blasting pit, did not examine the structure of the area and did not examine other houses there. He said sand was the best transmitter of damaging waves from explosions. He heard the witnesses testify and was asked and testified:

"Q. All right, if what Mr. Diver says is true and if that occurred at his home immediately following that explosion on that day, what caused it if the explosion didn't? A. Well, *if* would be my opinion and my feeling that they were subjected to an air *born* shock wave."

He did not explain the shock wave but did say:

" * * * The windows showed no indication. And from windows used in this residence, they were double hung windows, part of the window would be exposed to this air *born* shock wave and would be your first indication that a damaging one occurred."

The witness Allgood further testified to the amount of explosives used at the time he was present and said they caused no undue vibrations and that a person within fifty feet of the shots would not be in danger. He said the shots in the hard rock created a little more havoc because they were heavier shots. While testifying from the daily worksheets he was asked and testified:

"Q. No. 8, on August 4, 1959, with 101 holes? A. I am sure that was in the hard rock there, I wouldn't be positive about it.

"Q. Well now, how do you arrive at the conclusion about these that are apparently hard rock? A. Well, I will tell you by the depth more or less there.

"Q. Well, No. 8 here that occurred on August 5, 1959, the record shows to be seventeen foot deep when that blast was set off? A. That is what he shows there but on the bottom of that in that hard rock, well, I know we never did go that deep in there.

"Q. That is what your record shows though is it? A. Yes, sir, that is what that record shows and I am not positive that was in the hard rock. Now he could have pulled that shot up on top.

"Q. But based on the record and a showing of 17 foot depth on the record and 101 holes and this amount of explosives and this amount of stuff moved it would appear to you to have been hard rock blast, is that what you said? A. No, the yardage there doesn't figure up because we never did pull that big a shot in the hard rock.

"Q. Oh, the yardage doesn't make that— A. No.

"Q. These items here, the number of holes and the depth are more controlling than the yardage? A. Than the yardage, yes, sir."

Eugene Morgan testified that he went to work for appellant about August 7, 1959 as a truck spotter at the stock pile. By comparing the dates of when he began and when he quit work he said he was present at the pit when an explosion occurred on August 12 and on August 18. He said when the explosion of August 18 occurred he was about 450 yards northwest from it and up on a hill; that he and the truck driver drove over there; that when the blast went off they got under the truck bed and that rocks as big as saucers fell around the truck. He said the ground shook pretty bad and that there was a lot of sound that jarred his ears and that a large dust cloud came up from the pit.

A jury trial was had and in answer to 31 special issues the jury found that an explosion occurred at the pit on or about August 5, 1959; that appellee suffered damage to his home as a direct and proximate result of the explosion, and that appellant, or his employees, were negligent in nine separate acts or omissions and that each such act or omission was negligence and a proximate cause of appellee's damage. The jury also found the market value of appellee's home before and after the explosion. On this verdict the judgment supra was rendered.

Appellant here presents twenty seven points. The first seven are briefed together and are to the effect that there is no evidence or insufficient evidence, to sustain the trial court's action: in overruling appellant's motion for an instructed verdict at the conclusion of appellee's evidence, at the conclusion of all of the evidence; for judgment non obstante veredicto; in entering judgment for appellee; in failing to disregard the jury's answers to issues 3 through 29 (the negligence issues) because of no evidence or insufficient evidence of any act or omission of negligence, and in submitting issues 3 through 29 to the jury.

Appellant says there is no evidence of negligence and none of proximate cause.

Appellant relies on the testimony of the witnesses Allgood and Taylor. We will first notice the evidence that disputes the evidence of these two witnesses.

The witness Allgood testified that he set the pattern for the holes to be drilled in the rock and the amount of explosives to be used. He was not present on August 5 and August 18 when the explosions on those dates occurred and testified to the mildness of the blasts and the effect of the shots when he was present. While he was testifying from the worksheet of the August 5 shot he questioned its accuracy. If this sheet did not in fact dispute his evidence of the pattern for holes and the amount of explosives he directed to be used then the testimony of other witnesses as above related disputes his evidence as to the effect of the shots. Also the testimony of the witness Morgan contradicts his evidence of the effect of the shots.

The testimony of appellee and Mrs. Schlemmer as well as that of the witnesses Mrs. Yoakum and Mr. Hairston was that the August 5 explosion was the heaviest of all the blasts and that it was an outstanding blast further contradicts Allgood's testimony as to the effects of the blasts. The testimony of these witnesses and especially that of appellee and Mrs. Schlemmer that the damage to appellee's home occurred immediately following the blast contradicts the witness Taylor's testimony that the damage he found to appellee's home could not have been caused by the blast. They said it was.

The testimony of appellee and his witnesses, if accepted as apparently it was by the jury, shows an invasion of and a trespass on appellee's property by a damaging force originating at appellant's blasting pit and which force appellant's employees set in motion. It also shows, if negligence is shown, that such force was a proximate cause of appellee's damage.

The right to select the amount of explosives to be used by appellant through

his employees was a choice for him, through them, to make. However in making such choice there was an obligation to use ordinary care. If as testified by Allgood, a pattern for holes and amount of explosives to be used was set and if that standard of choice was violated, a conclusion the evidence supra supports, the jury could find a failure to use ordinary care and a finding of negligence has support in the evidence. This view is supported by the reasoning in Comanche Duke Oil Co. v. Pacific Coal & Oil Co., Tex.Com. App., 298 S.W. 554.

The trial court gave the jury definitions of negligence, ordinary care and proximate cause. The jury found that on or about August 5, 1959 appellant: conducted blasting operations near appellee's residence; caused an explosion of great force to occur near appellee's residence; blasted with such force that it caused atmospheric disturbance on appellee's property; blasted with such force that it caused ground disturbance on appellee's property; blasted with such force that it caused concussion and shock to appellee's property; used large shots of dynamite or other explosives; failed to use small shots of explosives; failed to use the explosives in a manner to avoid damaging appellee's residence, and failed to break the rock in a manner to avoid injuring appellee's property. The jury also found that each act or omission respectively was negligence and a proximate cause of appellee's damage.

Appellant's first seven points do not require us to consider the findings separately.

The evidence shows that an explosion was set off with sufficient force to cause damage to appellee's property; that it was near enough to and did cause damage; that the explosion caused vibrations in the air and in the ground not only at appellee's residence but also at his neighbors. We hold there was some evidence and sufficient evidence to support the jury's findings.

Kelly v. McKay, 149 Tex. 343, 233 S.W.2d 121.

What we have said disposes of appellant's points relative to a failure to instruct a verdict, judgment non obstante veredicto, entering judgment and failing to disregard jury findings 3 to 29. Appellant's first seven points are overruled.

Appellant's points eight and nine complain that there is no evidence of any contract of insurance between appellee and the insurance company which is the basis for recoupment and indemnity by the insurance company.

Appellee and the insurance company stipulated as to the policy and its provisions. It was agreed the stipulation was in support of appellee's action against the insurance company.

The contract of insurance protected appellee against loss sustained and when such loss was found to have been caused by the negligence of appellant then the insurance company was subrogated to the rights of appellee as against appellant. 24–B Tex.Jur.Sec. 398, p. 801. For this reason the stipulation of the company and appellee and the admission in evidence of such stipulation did not violate appellant's legal rights.

Appellant's point ten complains that the jury's answers to issues 3 through 29 are so against the great weight and preponderance of the evidence as to be manifestly unjust.

Supra we have set out the evidence relevant to the jury findings and have applied it to those findings. In addition we have read the lengthy statement of facts and have considered the evidence in support of the findings and that opposed thereto. Our consideration of all the evidence convinces us that the jury findings are not so against the great weight and preponderance of the evidence as to be manifestly unjust. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

Appellant's point eleven complains that the trial court erred in permitting the witness Allgood

"* * * to testify that in his opinion if Plaintiff's house had been damaged by an explosion set off by Appellant in the quarry, such fact would indicate a lack of ordinary care in the conduct of such blasting operations for the reason that it was an invasion of the province of the jury to determine the disputed fact questions in the case, and was a conclusion which no witness should be permitted to make."

We quote the complained of testimony:

"Q. * * *. Now, Mr. Allgood, would a reasonably prudent dynamiter or blaster set off a charge of explosive of such force as to damage a home about a mile and a half from the blasting area? A. No, sir, I don't believe it is possible.

"Q. You don't believe. I said would— A. No, sir.

"Q. Just answer my question. A. No, sir, it wouldn't.

"Q. He wouldn't do that would he? A. No, sir.

"Q. A reliable ordinary prudent man in the business of blasting, he wouldn't set off such a charge of dynamite or explosives such as to damage a home a mile and a half away from the blasting area? A. No, sir, that is right, he sure wouldn't.

"Q. And if he did he wouldn't be following the accepted practices of the trade? A. That is right.

"Q. And wouldn't be doing it in a reasonably prudent manner would he? A. No, sir, that is right.

"Q. Well, now Mr. Allgood, not admitting that this house of Mr. Diver's was damaged, but if it was damaged, from blasting done at the pit that you have been testifying about, the explosives wouldn't have been handled properly would they? A. No, sir, it sure wouldn't have been.

"Q. Would have been too much explosives? A. Yes, sir.

"Q. And a reasonably prudent man doing that work wouldn't have set it off would he? A. No, sir, he would have been afraid to.

"Q. Why? A. Well, he couldn't get back far enough to protect himself in the first place, if he could tear a house down a mile and a half away.

"Q. I said damage a house a mile and a half away. A. He wouldn't dare set it off.

"Q. Any kind of damage. A. Yes, sir.

"Mr. Camp: I believe that is all."

The above evidence was admitted during the cross examination of the witness by the attorney for the insurance company. The record shows the evidence had been heard and counsel had announced "I believe that is all." Appellant then objected to the testimony and moved the court to strike it.

■ We think the objection was not timely. Also the witness Allgood had already testified that he set the pattern for drilling the holes and directed the amount of explosives to be used, and as to the force and effect of blasts when he was present. It was an issue whether his pattern and instructions were violated. At any rate reversible error is not presented. Rule 434, Texas Rules of Civil Procedure.

Point twelve complains that the witness Morgan was permitted to testify as to the force of an explosion subsequent to August 5.

■ The evidence tended to contradict the testimony of Allgood or to show that

his pattern for holes and his direction for the amount of explosives to be used were violated. Moreover the allegation of appellee was that his damage was caused by an explosion occurring "on or about August 5, 1959" and was broad enough to include August 18. Texas & N. O. R. Co. v. Weems, Tex.Civ.App., 184 S.W. 1103, affirmed Texas & N. O. R. Co. v. Weems, Tex.Com.App., 222 S.W. 972.

Appellant's point thirteen complains that the trial court erred in overruling his objection to counsel's commenting on his failure to call his blasting man Ruiz as a witness.

■ There is an unexplained failure of appellant to call Ruiz as a witness. The right to comment on appellant's failure to call Ruiz as a witness grows out of the relationship of this witness with appellant, not his employment by appellant at the time of trial, and not on his being unavailable to the counsel commenting. Tex-Jersey Oil Corporation v. Beck, 157 Tex. 541, 305 S.W.2d 162, 68 A.L.R.2d 1062. In the state of the record before us the argument was not improper.

Points fourteen through twenty-six are grouped for briefing. They are to the effect that the trial court erred in submitting each of the nine issues inquiring as to acts or omissions of appellant and the accompanying issues of negligence and proximate cause.

■ To decide each of these points separately would serve no useful purpose since appellee alleged more than one act or omission of negligence proximately causing his damage and a finding of one act or omission if supported by the evidence will sustain the judgment rendered. Houston Natural Gas Co. v. Kluck, Tex.Civ.App., 154 S.W.2d 504, affirmed 139 Tex. 491, 163 S.W.2d 618.

Appellee alleged and the jury found that appellant was negligent in blasting with such force that it caused: concussion and shock; atmospheric disturbance, and ground disturbance to appellee's property and further that each said act was negligence and a proximate cause of his damage.

Supra we have discussed the evidence showing the force of the explosion on or about August 5, 1959. We have also discussed the damage caused to appellee's home and on the premises of his neighbors. This evidence shows there was disturbance in the air, in the ground, and concussion and shock.

The witness Allgood testified that when a new blasting pit was opened they always called whoever was going to furnish the powder and always investigated if there is anything around to be damaged. He said the company did send an engineer to assist him to investigate and to design the shots. Such investigations were made, the pattern for the holes and the amount of explosives to be used designed. Thus it was foreseen that damage might result if proper precautions were not taken or observed. There is evidence, supra, to show that if the pattern for holes designed by Allgood and the amount of explosives directed by him to be used had the effect as testified to by him when he was present, then his pattern of holes and the amount of explosives used on August 5 were not observed. The issues above stated were raised by the evidence, the trial court did not err in submitting them, and applying the definitions of negligence, ordinary care and proximate cause, as the jury was instructed to do to the answers, such answers are sufficiently supported by the evidence.

Appellant's twenty seventh and final point is that the cumulative effect of the errors complained of in the preceding points was a denial of a fair trial to appellant.

■ We have considered and disposed of appellant's points and have held that they do not present error. Under point ten we considered all of the evidence. It cannot be here said that the cumulative effect of the points, under our disposition of them,

under all the facts and the surrounding circumstances of the case was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, or prevented appellant from making a proper presentation of his case here. Rule 434 supra.

Appellant's points are overruled and the judgment of the trial court is affirmed.

Affirmed.