COMPUTIZE, INC. and Power Chips Technologies, Inc., d/b/a Power Communications Technologies, Inc., Appellants,

v.

NHS COMMUNICATIONS GROUP, INC., Appellee.

No. 06–98–00168–CV.

Court of Appeals of Texas, Texarkana.

Argued Feb. 25, 1999.

Decided April 20, 1999.

Colin Paul Cahoon, Carstens, Yee & Cahoon, LLP, Dallas, for appellant.

Robert Ruotolo, Law Offices of Eric D. Ryan, Dallas, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice ROSS.

Computize, Inc. and Power Chips Technologies, Inc., d/b/a Power Communications Technologies, Inc. (PCT) appeal an

award of summary judgment in favor NHS Communications Group, Inc. They bring two points of error which contend:

1. the trial court erred in striking Computize's and PCT's responses to NHS' motion for summary judgment on the basis that Computize and PCT were not represented by an attorney at the time the responses were filed because NHS never objected to the pro se representation of the corporations until after the time for filing a response had run; and

2. the trial court erred in granting summary judgment because the movant relied upon stipulated facts to which Computize and PCT were not parties and also because NHS offered no evidence in support of its liquidated damages.

We sustain both points of error and remand the case to the trial court for further proceedings.

Lynn Garrison had a noncompete agreement with his employer, NHS. The agreement between Garrison and NHS stated that Garrison was neither to "directly or indirectly ... enter into or attempt to enter into the 'Restricted Business'" nor "induce or attempt to persuade any former, current or future employee" to leave the employment of NHS and enter into any relationship with Garrison. NHS designed, installed, and serviced cable systems which transported voice and data for businesses.

In June 1997, Garrison left the employment of NHS. Garrison, Charles Prefume, Computize, and Power Chips Technologies, Inc. then formed PCT and began operating a cabling business as "Power Communications Technologies, Inc." In July 1997, Garrison and Prefume formed a general partnership called "Power Communications Technology." The partnership performed the same cabling business as PCT. Garrison also hired Chris Sanders, a former employee of NHS who also had a similar noncompete agreement as Garrison's.

NHS sued Garrison, Prefume, Computize, PCT, and Power Communications Technology (Garrison and Prefume's general partnership), alleging that Garrison breached the noncompete agreement he had with NHS and that all of the defendants tortiously interfered and conspired to commit tortious interference with the noncompete agreement. Defendants Computize and PCT timely filed a general denial on August 29, 1997.

On January 28, 1998, the attorney of record for Computize and PCT filed an unopposed motion to withdraw as counsel, which noted that the trial was set for February 23, 1998. This unopposed motion stated that "no new attorney is to be substituted at this time." The trial court entered an order allowing withdrawal of counsel on February 3, 1998. The trial court's order directs that communications with the defendants Computize and PCT be directed through their respective presidents, neither of whom was an attorney.

On April 27, 1998, the trial court entered an interlocutory judgment that included stipulated facts agreed to by Garrison, Prefume, and their partnership, Power Communications Technology. In this agreement, the three defendants stipulated unconditionally to liability for breaching Garrison's noncompete agreement. The three defendants agreed to a judgment for actual damages of $66,900.00, as well as for attorneys' fees in the amount of $12,500.00. The agreed judgment also provided for injunctive relief to NHS against these three defendants. Computize and PCT were not parties to this agreement but, rather, the agreement stated that "three of the five Defendants, Lynn Garrison, Charles Prefume, and Power Communications Technology" came to be heard and announced the agreement to stipulations of fact and the entrance of an agreed interlocutory judgment admitting liability and damages.

On April 30, 1998, NHS filed a motion for summary judgment against all five of the defendants. NHS also specifically acknowledged in the "Undisputed Facts" section of its motion for summary judgment that Computize and PCT were represented by their respective presidents following withdrawal of the attorney from representation of both parties. NHS did not object to such pro se representation in its summary judgment motion.

On May 21, 1998, Computize and PCT filed, pro se, cross-motions for summary judgment on all of NHS' claims. On May 28, 1998, Computize and PCT filed, again pro se, responses to NHS' motion for summary judgment.

On June 15, 1998, NHS filed a motion to strike defendants' cross-motions for summary judgment and responses to NHS' motion for summary judgment. In this motion, NHS complained for the first time that Computize and PCT were not represented by counsel. NHS alleged that Computize and PCT were both Texas corporations and noted that the cross-motions for summary judgment and the responses to NHS' motion for summary judgment were signed by the respective presidents of those two corporations. NHS provided certificates from the Texas Supreme Court showing that the presidents were not licensed attorneys. Both of these certificates were dated April 14, 1998, two months before the filing of the motion to strike and over two weeks before the filing of plaintiff's motion for summary judgment in which NHS noted without objection that the corporations were being represented by their respective presidents. The corporate defendants did not file a response to the motion to strike.

On June 24, 1998, two days after the submission deadline, attorney David Shin filed a notice of appearance representing Computize and PCT and filed a motion for continuance. The stated purpose of the motion for continuance was to allow attorney Shin to "review the documents and resubmit." The motion was supported with an affidavit by PCT's president stating that the defendants were unaware that a corporation is prohibited from appearing pro se and that the defendants' first notice of such prohibition was NHS' motion to strike filed only a week prior to the filing of the defendants' motion for continuance. The motion for continuance also stated that it was the first request for continuance filed by PCT and Computize.

On July 8, 1998, the trial court rendered a final judgment denying Computize and PCT's motion for continuance, granting NHS' motion to strike (thereby striking the cross-motions for summary judgment and responses to NHS' motion for summary judgment filed by Computize and PCT), and granting NHS' motion for summary judgment and ordering that NHS recover actual damages from all the defendants, jointly and severally, in the amount of $66,900.00, as well as attorneys' fees in the amount of $12,500.00. These are the same actual damages and attorneys' fees for which the other three defendants had previously stipulated liability. On the same date as the signing of the final judgment, Computize and PCT filed a motion for reconsideration, a motion for leave to file a response to NHS' motion for summary judgment, and a response to NHS' motion for summary judgment. These were denied by the trial court.

Computize and PCT also filed a motion for new trial on the basis that the court erred in granting NHS' motion for summary judgment because there remained disputed fact issues and because the damages were unliquidated and were not proven by NHS. The trial court also denied this motion.

 The summary judgment movant has the burden of establishing by competent summary judgment proof that, as a matter of law, there is no genuine issue of material fact as to one or more essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). When a plaintiff

moves for summary judgment, the plaintiff must show entitlement to prevail on each element of the cause of action. *Al's Formal Wear v. Sun,* 869 S.W.2d 442, 444 (Tex.App.-Houston [1st Dist.] 1993, writ denied). The plaintiff must produce evidence sufficient to support an instructed verdict at trial. *Id.* The standards in reviewing summary judgment evidence are:

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of fact and that it is entitled to judgment as a matter of law.

(2) In deciding whether there is a material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

(3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Sysco Food Servs., Inc. v. Trapnell,* 890 S.W.2d 796, 800 (Tex.1994).

NHS moved for summary judgment on the bases that (1) Garrison and the other defendants violated the covenant not to compete; (2) all defendants aside from Garrison tortiously interfered with the covenant not to compete or conspired to tortiously interfere with the noncompete contract; and (3) the business entity defendants (Computize, PCT, and Power Communications Technology) were liable for the conduct of one another under the single business enterprise theory.

Since the trial court did not consider the responses of Computize and PCT in ruling on the summary judgment motion, this Court will look only to the motion to determine if NHS was entitled to a summary judgment.

In its first point of error, Computize and PCT contend that the trial court erred in striking their responses to NHS' motion for summary judgment because the two were not represented by counsel when the responses were filed. The responses were signed by the respective corporate presidents. The corporations contend that they were not told that they could not represent themselves pro se following the withdrawal of their previous counsel.

■ Rule 7 of the Texas Rules of Civil Procedure states that "[a]ny party to a suit may appear and prosecute or defend his rights therein, either in person or by an attorney of the court." TEX.R. CIV. P. 7. This rule has been held to apply only to individuals and not to corporations. *Electronic Data Sys. Corp. v. Tyson,* 862 S.W.2d 728, 737 (Tex.App.-Dallas 1993, no writ); *Dell Dev. Corp. v. Best Indus. Uniform Supply Co.,* 743 S.W.2d 302, 303 (Tex.App.-Houston [14th Dist.] 1987, writ denied); *Globe Leasing, Inc. v. Engine Supply and Mach. Serv.,* 437 S.W.2d 43, 45 (Tex.Civ.App.-Houston [1st Dist.] 1969, no writ). The Texas Supreme Court has recently confirmed this interpretation of Rule 7, but allowed an exception when the agent of the corporation is performing a ministerial act. *See Kunstoplast of Am., Inc. v. Formosa Plastics Corp.,* 937 S.W.2d 455, 456 (Tex.1996) (a nonlawyer is not precluded from performing the specific ministerial task of depositing cash with a clerk in lieu of a cost bond). However, a response to a motion for summary judgment is not a ministerial act. Therefore, we hold that a response to a motion for summary judgment by a corporation must be made through an attorney.

■ The next step in the analysis is to determine the status of the answers filed by the two corporations in this case. In the context of default judgments where nonlawyer corporate agents answered the suit, the Corpus Christi Court of Appeals has decided that such answers are defective as an answer but not, in the absence of objections or special exceptions, a nullity. *R.T.A., Int'l, Inc. v. Cano,* 915 S.W.2d 149, 151 (Tex.App.-Corpus Christi 1996, writ denied); *Handy Andy, Inc. v. Ruiz,* 900 S.W.2d 739, 741 (Tex.App.-Corpus Christi 1994, writ denied). Answers filed by pro se corporate litigants are enough to avoid default judgment.

■ We have found no guidance in a summary judgment context. We are mindful that TEX.R. CIV. P. 166a sets out specific requirements which must be met in order to obtain or avoid a summary judgment. Because of these requirements, we find that, unlike in the default judgment context, answers filed by pro se corporate litigants are not enough to avoid summary judgment.

■ In the present case, NHS filed a motion to strike the pro se responses of Computize and PCT on June 15, 1998, two months after confirming that the presidents of each of the corporations were not attorneys. The corporations then secured attorney representation, who filed a notice of appearance and a motion for continuance on June 24, 1998, to "review the documents and resubmit." The trial court denied the motion for continuance on July 8, 1998, within its final judgment, where it also struck the answers filed by Computize and PCT, struck the cross-motions for summary judgment filed by Computize and PCT, and granted summary judgment in favor of NHS.

■ The granting or denial of a motion for continuance is within the trial court's sound discretion. *State v. Crank,* 666 S.W.2d 91, 94 (Tex.1984); *Hernandez v. Heldenfels,* 374 S.W.2d 196, 202 (Tex.1963). The trial court's action will not be disturbed unless the record discloses a clear abuse of discretion. *Villegas v. Carter,* 711 S.W.2d 624, 626 (Tex.1986). In reviewing whether a trial court abused its discretion, the appellate court only decides whether the trial court's action was arbitrary and unreasonable. *Landry v. Travelers Ins. Co.,* 458 S.W.2d 649, 651 (Tex. 1970). It should appear clearly from the record that there has been a disregard of the rights of a party before the appellate court reverses the trial court's discretionary ruling. *Yowell v. Piper Aircraft Corp.,* 703 S.W.2d 630, 635 (Tex.1986).

■ When a trial court allows an attorney to voluntarily withdraw, it must give the party time to secure new counsel and time for the new counsel to investigate the case and prepare for trial. *Villegas,* 711 S.W.2d at 626 (citing *Lowe v. City of Arlington,* 453 S.W.2d 379, 382 (Tex.Civ. App.-Fort Worth 1970, writ ref'd n.r.e.); *Stefanov v. Ceips,* 395 S.W.2d 663, 665 (Tex.Civ.App.-Amarillo 1965, no writ); *Leija v. Concha,* 39 S.W.2d 948, 950 (Tex.Civ. App.-El Paso 1931, no writ)).

The attorney for Computize and PCT was allowed to withdraw on February 3, 1998. Computize and PCT contend they were unaware that the corporations could not appear pro se. There is no indication in the record of whether the withdrawing attorney informed Computize and PCT of the need to secure another attorney. The record shows that NHS knew that the presidents were not attorneys, but did not bring it to the attention of the trial court until just before the submission deadline set by the trial court. In the interim, NHS chose not to object to the pro se pleadings. The motion for continuance was filed two days after the submission deadline and was overruled.

By denying the motion for continuance, the trial court abused its discretion. Although almost three and a half months had passed between the time that counsel for Computize and PCT withdrew and the time the corporations hired new counsel, it does not appear that the granting of the motion for continuance to allow the new attorney to review and resubmit documents to the court would have caused any great injustice or hardship to NHS. By denying the motion for continuance, striking the nonmovants' pleadings, and granting the summary judgment, the trial court denied Computize and PCT an opportunity to properly respond to the summary judgment motion once they were aware of the prohibition on pro se representation for corporations. It appears that the only delay would be in a ruling on the summary judgment motion. As it stands, Computize and PCT have been unable to give *any* response to NHS' summary judgment mo-

tion; the denial of the continuance is a disregard of the rights of the parties. This point of error is sustained.

■ In the next point of error, Computize and PCT complain that the trial court granted a summary judgment on facts which, although stipulated to by other defendants, were not stipulated to by them. Specifically, Computize and PCT argue that the stipulation between NHS and the other defendants regarding the knowledge of Lynn Garrison's noncompete agreement was not binding on them and therefore did not constitute proper summary judgment evidence.

The stipulation contains statements that Computize, PCT, Power Communications Technology, and Charles Prefume gained knowledge of Garrison's employment agreement at the time they entered into the cabling business. Other stipulations also provide the basis for "single business enterprise" liability so that all of the defendants are responsible for the acts of each other. These facts include that: (1) Computize provided all the start-up and operating capital for PCT and Power Communications Technology; (2) Computize and Power Chips Technologies hired and paid all of the employees of Power Communications Technologies, Inc. and Power Communications Technology; and (3) PCT and Power Communications Technology obtained all of its vendor/supplier credit through Computize. The stipulated facts also stated the likely amount of lost profits by NHS due to Garrison's work with Computize and the related entities.

■ An entity that is not a party to a stipulation is not bound by that stipulation. *Kenneth H. Hughes Interests, Inc. v. Westrup*, 879 S.W.2d 229, 233 (Tex.App.-Houston [1st Dist.] 1994, writ denied); *United Servs. Auto. Ass'n v. Ratterree*, 512 S.W.2d 30, 34 (Tex.Civ.App.-San Antonio 1974, writ ref'd n.r.e.). NHS cites *Pelphrey v. Diver* in contradiction to this proposition. 348 S.W.2d 453 (Tex.Civ.App.-Austin 1961, writ ref'd n.r.e.).

In *Pelphrey*, a quarry operator appealed a judgment in favor of the homeowner that awarded compensation to the homeowner for damage to his home caused by negligent blasting operations. The appellant/quarry owner complained that there was no evidence of any contract of insurance between the appellee and the insurance company. The court found that the appellee and the insurance company stipulated to the policy and its provisions. It was agreed that the stipulation was in support of the appellee's action against the insurance company. The contract of insurance protected the appellee against loss sustained, and when such loss was found to have been caused by the negligence of the appellant, then the insurance company was subrogated to the rights of the appellee as against the appellant. The court found that, for this reason, the stipulation of the company and the appellee, and the admission in evidence of such stipulation, did not violate the appellant's legal rights.

The present case is different. The stipulations could affect the legal rights of Computize and PCT. NHS relies on the stipulated facts to support its claim for tortious interference with a contract and conspiracy to commit tortious interference with a contract. In this connection, the stipulated facts contain allegations by the three settling defendants that Computize and PCT were aware of Garrison's noncompete agreement and purposefully disregarded it. Unlike *Pelphrey*, where the stipulation dealt only with the secondary issue of the existence of an insurance contract and not the primary question of negligence, the stipulation in this case deals with the central question of whether the defendants committed conspiracy or interference with the noncompete contract. The stipulations are not effective as to Computize and PCT since they were not parties to it.

NHS contends that even without the stipulated facts, enough evidence was offered to prove knowledge by Computize and PCT of the noncompete agreement.

Specifically, NHS contends that they knew of the noncompete agreement because PCT employed Garrison as its president and Garrison himself had knowledge of his own noncompete agreement, which knowledge was imputed to PCT because Garrison was an officer of PCT. NHS also contends that Garrison's knowledge of the noncompete agreement was imputed to Computize and PCT because the businesses operated as a single business entity. NHS also claims that Computize and PCT definitely had knowledge of the noncompete agreement after they were served with NHS' original petition on August 12, 1997, but continued to employ Garrison after that time. Finally, referring back to the stipulations, NHS argues that Computize and PCT failed to controvert the stipulated facts or otherwise create a fact issue as to the elements of its causes of action because the trial court struck the responses by Computize and PCT.

■ We cannot agree with NHS that it has established its right to summary judgment. The evidence offered in support of summary judgment, other than the stipulated facts, does not demonstrate that NHS is entitled to summary judgment as a matter of law. Although summary judgment evidence exists outside of the stipulated facts which support the damage award of $66,900.00, we do not believe the evidence as it now stands supports liability for the amount. Accordingly, we sustain appellants' second point of error.

The judgment of the trial court as to Computize and Power Chips Technologies, Inc., d/b/a Communications Technologies, Inc., is reversed and remanded for further proceedings.