

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-22-00021-CV

---

CANDIDO J. CONIGLIO, SR., WILDWOOD SHOPPING CENTER, INC., PROFIT
SHARING PLAN, AND CONIGLIO-SMITH TRUST, Appellants

V.

MICHAEL J. WOODS, Appellee

---

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CV-19-44288

---

Before Morriss, C.J., Stevens and van Cleef, JJ.
Opinion by Justice van Cleef

O P I N I O N

Michael J. Woods won a traditional motion for summary judgment on his breach of contract claim against Candido John Coniglio, Sr. (Senior). He also won a default judgment against Wildwood Shopping Center, Inc., Profit Sharing Plan, and Coniglio-Smith Trust (collectively the Entities). As a result, the trial court entered a final judgment for $601,815.62 in Woods's favor.

On appeal, Senior and the Entities (collectively Appellants) argue that the trial court erred by granting Woods's traditional motion for summary judgment because, among other things, the contract relied on by Woods to establish his claim did not satisfy the statute of frauds. They also argue that the trial court erred by entering default judgment against the Entities. We sustain these points of error raised by the Appellants. As a result, we reverse the trial court's judgment and remand the case for further proceedings in accordance with this opinion.

I.      **Factual and Procedural Background**

Senior is the owner of a 5,100-acre farm located in Fannin County. Because he lives in Florida, Senior's farm is operated and managed by Candido John Coniglio, Jr. (Junior). Woods, the owner of an adjacent farm, employed workers to cut hay on his property. According to Woods, Senior, who needed help to cut hay on 107 acres of his farm, agreed to allow Woods to cut and bale the hay in exchange for a portion of the hay crop. Beginning in 2015, Woods cut Senior's hay pursuant to an oral agreement. Both Senior and Junior testified that the oral agreement to allow Woods to cut the hay was on a year-to-year basis. However, Woods claimed

2

that he and Junior agreed to enter into a five-year lease of the farm, which would allow him to cut and bale the hay until December 31, 2020.

Woods was denied permission to cut the hay, beginning in 2018. In 2019, Woods sued Senior and Junior for the alleged breach of a written farm lease agreement. The petition alleged that, under the lease agreement, Junior and Senior would get forty percent of baled hay and Woods would keep the other sixty percent. Woods claimed that the following letter he wrote to the United States Department of Agriculture (2016 USDA Letter) constituted a memorialization of a lease agreement:

September 28, 2016

USDA
Fannin County FSA Office
2504 N Center Street
Bonham, Texas 75418

Subject: Farm Lease for Agriculture

To Whom It May Concern:

This is to inform you that Michael J. Woods operates my farm no. _____ (approximately 107 acres) agriculturally for hay. This lease agreement began in 2015 and will continue thru December 31, 2020.

Michael J. Woods
Farm Operator

John Coniglio
Farm Owner

3

In his petition, Woods alleged that he was the holder of a farm lease and asked the trial court to declare the validity of the alleged lease.[1]

In response to Woods's petition, Senior and Junior asserted the statute of frauds affirmative defense and answered that "the contract, if any, which form[ed] the basis of [Woods]'s claims against Defendants [was] too ambiguous." Junior and Senior argued that the only agreement between them and Woods was a year-to-year hay splitting agreement and not an agreement to lease property. Junior, who admitted to signing the letter drafted by Woods above, testified that he only signed the letter "because Mr. Woods told [him] that he needed that for his subsidy payments," that he did not take any money in exchange for a lease of the farm, and that he did not consider the letter to constitute a farm lease.

Woods filed a traditional motion for summary judgment that argued that he was entitled to judgment as a matter of law with respect to his breach of farm lease claim. In support, he attached the testimony taken during a temporary injunction hearing, the 2016 USDA Letter, his own affidavit, and a 2019 letter from the USDA acknowledging a farm lease. In response to Woods's motion for summary judgment, Junior and Senior attached their own affidavits, argued that there was only a year-to-year hay splitting agreement, and argued that Woods's alleged lease was invalid under the statute of frauds.

On December 28, 2020, the trial court found that "[t]here was a memorandum of agreement that satisfie[d] the Statute of Frauds in this case and the parties [were] bound by the terms of that agreement." It also found that Senior "breached [that] agreement by excluding

---

[1]Junior was eventually nonsuited without prejudice.

4

[Woods] from the property" and, as a result, granted partial summary judgment "as to contractual breach." Because the damages were disputed, the trial court found that they would be determined at a later date.

On September 3, 2021, the trial court set the matter for a January 20, 2022, bench trial and entered a scheduling order setting October 1, 2021, as the deadline to add additional parties and setting November 15, 2021, as the deadline for defendants to amend or supplement pleadings.

On October 1, 2021, Woods added additional parties by filing an amended petition that, in addition to Senior, named the Entities as parties.[2] The amended petition claimed that Senior was leasing the farm to the Entities and included causes of action for breach of the 2016 USDA Letter, tortious interference with prospective contract, unjust enrichment, and violations of the Texas Deceptive Trade Practices Act (DTPA). While Woods's prior petition against Senior and Junior had prayed that the trial court enter a judgment for joint and several liability, Woods's amended petition omitted such a prayer.

Woods's amended petition was served on November 8, 2021. The citation notified the Appellants that they were required to file a written answer "on the Monday next following the expiration of twenty days after" being served. *See* TEX. R. CIV. P. 99(b). On November 29, within the time specified by the citation, Senior filed an answer on behalf of the Entities as president of Wildwood Shopping Center, Inc., trustee of Profit Sharing Plan, and former trustee of Coniglio-Smith Trust.

---

[2]Woods also sued BT Coniglio Solar, LLC, but that entity was nonsuited without prejudice.

5

Woods filed a motion to strike the Appellants' answer on the grounds that the Entities were not permitted to appear without counsel. Woods also argued that, though timely under Rule 99(b) of the Texas Rules of Civil Procedure, the Appellants' answer was filed after the scheduling order's November 15 deadline for defendants to amend or supplement pleadings. The trial court granted Woods's motion to strike because the Entities could not represent themselves and because their answer was filed after the scheduling order's deadline. After striking the November 29 answer, the trial court decreed that Woods was entitled to default judgment against the Entities and set the "hearing to prove up such default judgment" for fifteen days later.

At the January hearing attended only by Woods and Senior, the trial court certified Woods as a damage expert, and Woods testified about damages resulting from the alleged breach of lease. After the hearing, the trial court entered a judgment restating the default against the Entities and entered judgment against the Entities and Senior, jointly and severally, for $163,434.68 for breach of a lease. The trial court also awarded treble damages of $490,304.94 under the DTPA, courts costs, and attorney fees, for a total judgment of $601,815.62. The Appellants argue that the trial court erred in entering that judgment.

## II.  Summary Judgment Was Improper

The Appellants argue that the trial court erred in determining that the statute of frauds had been satisfied in this case. As a result, they argue that summary judgment on the breach of contract claim was erroneous. We agree.

6

### A.  Standard of Review

"We review summary judgments de novo, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving any doubts in the nonmovant's favor." *Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 509 (Tex. 2022) (quoting *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 811 (Tex. 2019)). "A party that moves for traditional summary judgment must demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Id.* (citing TEX. R. CIV. P. 166a(c)).

"Once the movant produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact." *Polecat Hill, LLC v. City of Longview*, 648 S.W.3d 315, 330 (Tex. App.—Texarkana 2021, no pet.) (citing *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996)). "The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all the summary judgment evidence." *Delta Cnty. Appraisal Dist. v. PPF Gin & Warehouse, LLC*, 632 S.W.3d 637, 641 (Tex. App.—Texarkana 2021, pet. denied) (quoting *Lam v. Phuong Nguyen*, 335 S.W.3d 786, 789 (Tex. App.—Dallas 2011, pet. denied) (citing *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam))).

### B.  The Summary Judgment Evidence

Woods's summary judgment evidence, which included a transcript from a temporary injunction hearing, showed the existence of disputed facts. At the temporary injunction hearing, Senior testified that he knew Woods began harvesting hay in 2015 but that "[e]very year [he] had

7

him do it on a year-to-year basis." Senior testified that he was unaware of any lease and that Junior would have personal knowledge of any agreement with Woods.

Junior testified that the farm was owned by Senior but that he had the authority to enter into hay-splitting arrangements. According to Junior, Woods had permission to cut and bale the hay and, for "the first year," would keep sixty percent of the baled hay. Junior testified that Woods only cut hay for two years. When Woods presented Junior with the 2016 USDA Letter, Junior agreed to sign it, stating, "I considered it permission so he could get his farm subsidy."[3] Junior testified that he did not consider the letter to be a lease agreement, that "there was no lease involved," and that he did not receive any money in exchange for any lease.

Junior testified that he told Woods in 2018 that he did not need him to cut the hay that year and said that Woods did not protest. Later that year, Junior changed his mind and agreed to let Woods cut the hay on a 50/50 split, but Woods testified that the weather did not cooperate

---

[3]Junior's affidavit stated:

> Mr. Woods and I agreed that he would provide the labor, equipment, and baling material and my father would provide Mr. Woods access to "the Farm" to cut and bale the hay. After the hay was cut and baled, Mr. Woods would receive sixty percent (60%) of the hay and my father's cattle operation would receive forty percent (40%) of the hay. . . . Mr. Woods cut and baled the hay on "the Farm" in 2015, 2016, and 2017. Each year, when it was time to cut and bale the hay, I'd call Mr. Woods and ask him if he would come and cut the hay. In 2018, I called Mr. Woods and told him that we did not need him to cut the hay and that we were going to keep all the hay. At no time, did I or any other employee or agent of my cattle operation enter into a written lease agreement with Mr. Woods. At no time has Plaintiff ever paid my father, myself, or my father's cattle operation rent related to "the Farm" . . . .

> . . . .

> In 2016, Mr. Woods came to me and asked me to sign a letter which he had drafted to the USDA. He indicated that the letter would allow him to claim a subsidy from the USDA, related to "the Farm." After, reviewing the document briefly, I executed it. However, at no point did I ever execute any document which created a landlord tenant relationship between Mr. Woods and my father, myself, or my father's cattle raising business.

8

and that he could not cut the hay. Junior did not plan on allowing Woods to cut the hay anymore.

Woods testified that the parties operated under an oral agreement until he and Junior entered into a five-year lease agreement, purportedly confirmed in writing via the 2016 USDA Letter. In his affidavit, Woods stated:

> I negotiated with Defendant Junior regarding the terms of the agreement and we resolved that rent would be paid for my leasing the Farm to Defendants in an amount equal to 40%. I would then receive 60% of the baled hay from the Farm (the "Lease").
>
> . . . .
>
> . . . . On or about September 28, 2016, Defendant Junior signed on behalf of his father Senior, the USDA Lease Confirmation Agreement. . . . I understood that the Lease term lasted until December 31, 2020. . . .
>
> . . . . From at least 2015 through 2017, I leased the farm under the terms of the Lease and paid the rent due thereunder in accordance with the terms of such Lease.
>
> . . . .
>
> . . . . Despite the Plaintiff and Defendants agreeing in the Lease that I had leased the Farm and the right to harvest the hay, Defendants simultaneously leased the Farm to third parties and received rent. . . . The lease of the Farm to a third party during my lease interfered by [sic] ability to use the Farm. In fact, on July 3, 2020, Defendants gave the first cut of the Farm to another farmer and then the construction of the solar farm, the project of the third party, commenced, further interfering with my rights per the Lease to use and enjoy the Farm.

After the dispute arose in this case, Woods wrote to the USDA. In reponse to his letter, he received a July 10, 2019, letter from Amy Lindsey, County Executive Director of the Fannin County Farm Service Agency (FSA), on USDA letterhead bearing the subject line "FSA Farm 1077 – Lease." The letter, which was attached as summary judgment evidence, said, "Per your

9

request, please be advised that USDA-FSA has acknowledged and regards your lease with Mr[.] John Coniglio, owner of farm 1077, as valid. The lease states that your agreement is good through December 31, 2020[,] and only covers approximately 107 acres."

### C.   The Statute of Frauds Was Not Satisfied

The parties disputed the nature of their agreement.[4] The summary judgment response argued that Junior and Senior never entered into a lease agreement and that Woods could not satisfy the statute of frauds because there was no valid written lease. When a promise or agreement, either by its terms or by the nature of the required acts, cannot be completed within one year, it falls within the statute of frauds and is unenforceable unless it is in writing and signed by the person to be charged. *See* TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(6). A lease of real estate for more than one year must also satisfy the statute of frauds. *See* TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(5).

Woods argued, and the trial court found, that the 2016 USDA Letter signed by Junior satisfied the statute of frauds. Whether that letter is sufficient to satisfy "the statute of frauds is a question of law, which we review de novo." *Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 642 (Tex. 2013); *see Petrohawk Props., L.P. v. Jones*, 455 S.W.3d 753, 764 (Tex. App.—Texarkana 2015, pet. dism'd). "The 'statute of frauds requires that a memorandum of an agreement . . . must be complete within itself in every material detail and contain all of the essential elements of the agreement so that the contract can be ascertained from the writings without resorting to oral

---

[4]Our ruling is based solely on the evidence Woods attached to his summary judgment motion and the arguments presented in the response to Woods's motion.

testimony.'"[5]  *Petrohawk Props., L.P.*, 455 S.W.3d at 763 (quoting *Sterrett v. Jacobs*, 118 S.W.3d 877, 879–80 (Tex. App.—Texarkana 2003, pet. denied)).

"To be enforceable, a contract must address all of its essential and material terms with 'a reasonable degree of certainty and definiteness.'" *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016) (quoting *Pace Corp. v. Jackson*, 284 S.W.2d 340, 345 (Tex. 1955)). "[T]he material terms of a contract are determined on a case-by-case basis." *Id.* (alteration in original) (quoting *McCalla v. Baker's Campground, Inc.*, 416 S.W.3d 416, 418 (Tex. 2013) (per curiam)). "[T]he agreement's terms must also be sufficiently definite to 'enable a court to understand the parties' obligations,'" "and to give 'an appropriate remedy' if they are breached." *Id.* (quoting *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000); RESTATEMENT (SECOND) OF CONTRACTS § 33(2) (1981)).

The only writing memorializing any agreement was the 2016 USDA Letter, which said only the following:  "This is to inform you that Michael J. Woods operated my farm no. 1077, (approximately 107 acres) agriculturally for hay.  This lease agreement began in 2015 and will continue thru December 31, 2020."  Though this document purports to memorialize that 107 acres of the farm was leased, we conclude that this was insufficient to meet the statute of frauds. The first sentence referenced that Woods had operated the farm in the past under unspecified terms.  Because the term "operate" did not explain whether Woods grew, cut, or baled hay, or whether he was obligated under the lease to do so, the 2016 USDA Letter did not specify Woods's obligations.  The second sentence contains none of the terms of the lease, but simply

---

[5]"Parol evidence may be used to explain or clarify the written agreement, but not to supply the essential terms." *Tex. Builders v. Keller*, 928 S.W.2d 479, 481 (Tex. 1996) (per curiam).

states that whatever was agreed to would continue until December 31, 2020. The document did not include terms of consideration or price, did not explain whether Woods had other rights typically associated with the lease of property, such as the right of quiet enjoyment of the farm, and was insufficient to establish the parties' obligations. Because there was no valid written agreement containing the material terms of the alleged lease agreement, Woods was not entitled to summary judgment as a matter of law.[6]

Because we find that summary judgment was improper, we sustain the Appellants' first point of error.

## III.    We Reverse the Default Judgment

Next, the Entities argue that the trial court erred by entering default judgment against them after striking their answer. We agree.

The Entities were first added to this lawsuit as a result of Woods's amended October 1, 2021, petition. They were not served with citation until November 8. A defendant's answer to a plaintiff's petition is to be filed on the first Monday after the expiration of twenty days from the date of service thereof. The record shows that the Entities timely filed an amended answer on November 29.[7] Even so, Woods filed a motion to strike the answer because it was untimely

---

[6]Woods's brief relies on the record to establish that he paid consideration for the lease, but his own summary judgment evidence—the transcript from the temporary injunction hearing—establishes the existence of a dispute on this matter. Woods also urges the partial performance exception to the statute of frauds, but that issue was not before the trial court and, in any case, is a question of fact based on the hearing transcript. *See Burrus v. Reyes*, 516 S.W.3d 170, 182 (Tex. App.—El Paso 2017, pet. denied); *Vt. Info. Processing, Inc. v. Mont. Beverage Corp.*, 227 S.W.3d 846, 853 (Tex. App.—El Paso 2007, no pet.); *see also Thomas v. Miller*, 500 S.W.3d 601, 610–11 (Tex. App.—Texarkana 2016, no pet.).

[7]The record also suggested that an answer was filed on November 24.

under the trial court's scheduling order and because the Entities were not represented by counsel. The trial court entered the following order with respect to the Entities:

> The Court finds that Defendants Wildwood Shopping Center Inc., Profit Sharing Plan and Coniglio-Smith Trust are entities that cannot represent themselves.
>
> The Court finds that the Amended Answer and Counterclaim as to Defendants Wildwood Shopping Center Inc., Profit Sharing Plan and Coniglio-Smith Trust, therefore, must be stricken.
>
> . . . .
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff is entitled to a default judgment against Defendants Wildwood Shopping Center Inc., Profit Sharing Plan and Coniglio-Smith Trust . . . .

First, it does not appear that the trial court granted the motion to strike on the ground that the answer was untimely. That is likely so because the Entities, which had just been added to the suit, were not parties subject to the trial court's September 2021 scheduling order.

Next, the trial court's order stated that it struck the Entities' petition because they could not represent themselves. Even so, while the answer was defective, we do not find that this could be the basis for entering a default judgment. *See KSNG Architects, Inc. v. Beasley*, 109 S.W.3d 894, 897 (Tex. App.—Dallas 2003, no pet.) (determining that, while the trial court properly struck corporate entity's pro se answer, it "abused its discretion by not allowing the offending party any time to remedy the defect").

"Rule 7 of the Texas Rules of Civil Procedure states that '[a]ny party to a suit may appear and prosecute or defend his rights therein, either in person or by an attorney of the court.'" *Computize, Inc. v. NHS Commc'ns Grp., Inc.*, 992 S.W.2d 608, 612 (Tex. App.—Texarkana

13

1999, no pet.) (quoting TEX. R. CIV. P. 7). As a result, "[i]t is generally true that only a licensed attorney can appear and represent a corporation in litigation." *Rhojo Enters., LLC v. Stevens*, 540 S.W.3d 621, 625 (Tex. App.—Beaumont 2018, no pet.) (citing TEX. GOV'T CODE ANN. § 81.102(a)); *Kunstoplast of Am., Inc. v. Formosa Plastics Corp., USA*, 937 S.W.2d 455, 456 (Tex. 1996) (per curiam)). Also, "[a] trustee may not appear pro se in [his] representative capacity as a trustee." *Lorie Bernice Sharpe Tr. v. Phung*, 622 S.W.3d 929, 929 (Tex. App.—Austin 2021, no pet.). The answer filed by the Entities was defective.

Even so, "Texas law does not favor striking defective pleadings without giving an opportunity to replead." *Beasley*, 109 S.W.3d at 898 ("Texas law states the trial court *must* afford the party who filed the defective pleading an opportunity to cure the defect by repleading."). On the same day that it struck the Entities' answer, the trial court decreed that Woods was entitled to default judgment. Yet, several courts have found that answers filed by pro se corporate litigants are enough to avoid the entry of default judgment. *See id.*; *Rhojo Enters.*, 540 S.W.3d at 625; *Computize, Inc.*, 992 S.W.2d at 613; *R.T.A. Int'l, Inc. v. Cano*, 915 S.W.2d 149, 151 (Tex. App.—Corpus Christi 1996, writ denied).

This is because,

when considering answers filed by non-attorney corporate officers, the courts of appeals have "gone to great lengths to excuse defects in answers to prevent the entry of default judgments against parties who have made some attempt, albeit deficient, unconventional, or flat out forbidden under the Texas Rules of Civil Procedure, to acknowledge that they have received notice of the lawsuit pending against them."

*Rhojo Enters.*, 540 S.W.3d at 625 (quoting *Guadalupe Econ. Servs. Corp. v. Dehoyos*, 183 S.W.3d 712, 715 n.4 (Tex. App.—Austin 2005, no pet.) (quoting *Hock v. Salaices*, 982 S.W.2d

14

591, 593 (Tex. App.—San Antonio 1998, no pet.)). In *Rhojo*, a pro se corporate defendant's answer was sufficient, albeit defective, to prevent the entry of a default judgment. We likewise find that the entry of default judgment against the Entities was improper under the particular circumstances of this case. *See id.*; *Cano*, 915 S.W.2d at 151 ("A signature of either a party or his attorney is only a formal requisite of an answer and the lack thereof does not justify default in a normal case.").

"It is a basic tenet of jurisprudence that the law abhors a default." *Hock v. Salaices*, 982 S.W.2d 591, 593 (Tex. App.—San Antonio 1998, no pet.). We sustain the second point of error.[8] On remand, the trial court is instructed to afford the Entities the opportunity to cure their defective answer.[9]

## IV. Conclusion

We reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.

Charles van Cleef
Justice

Date Submitted: November 7, 2022
Date Decided: December 7, 2022

---

[8]Woods argues that the trial court might have struck the petition as a sanction for Senior's failure to appear for a deposition and respond to discovery requests. Woods does not explain how Senior's actions would support a death penalty sanction against the Entities. Woods also argues that the Entities had constructive notice of the trial and could have appeared at the hearing. As a result, he argues that they chose not to employ counsel for eighty-five days. However, the record shows that the trial court granted the default judgment on the same day it struck the Entities' answer.

[9]As a result of our disposition, we need not consider the parties' remaining arguments.

15